## Frankfort Modes Glass Works v. Arbogast.

(Decided April 23, 1912.)

### Appeal from Franklin Circuit Court.

1. Appeal and Error—Counterclaim—Issue Not Submitted—Error—Prejudicial.—Where in an action by plaintiff to recover balance of salary claimed to be due, the defendant relies upon a subsequent oral contract reducing plaintiff's salary, and also pleads a counterclaim, based upon such oral contract, for overpayments, and the issue whether or not there was such oral contract is submitted to the jury, and the jury finds against the defendant, failure of the court to submit the issue on the counterclaim is not prejudicial.

2. Same—Judgment—Reversal.—A judgment will not be reversed for the failure of the trial court to instruct the jury on an issue not made by the pleadings and upon which no instruction is offered.

JAMES H. POLSGROVE for appellant.

T. L. EDELEN and GUY H. BRIGGS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, F. C. Arbogast brought this action against appellant, Frankfort Modes Glass Works, for balance of salary claimed to be due him. He charges that on September 18, 1907, he was employed by appellant's board of directors as assistant to the president, at a salary of $2,500 per annum. That he entered upon and discharged the duties of his position from that time until December 28, 1907, when it was agreed between him and the board of directors that his salary should be reduced from $2,500 a year to $1,500 a year, during the months that the factory was not in operation; but when the factory was in operation, his original salary of $2,500 would be restored. That during the months of November and December, 1908, and February, March, April, and May, 1909, and during the months of November and December, 1909, and January and February, 1910, the factory was in operation, and he was entitled to be paid for his services at the rate of $2,500 a year, whereas he drew a salary at the rate of only $1,500 a year for said months, owing to the straightened circumstances of the company. Judgment is asked for the difference in the

monthly rate of $83.33, for a period of eleven months, amounting in the aggregate to $916.63. To the petition appellant filed an answer and counterclaim. It first denied the allegations of the petition, and then pleaded that about November 1, 1908, appellee entered into a parol contract with appellant, whereby he agreed to work for appellant in the factory so long as the same was not in full operation at a salary of $1,500 a year, and it was further agreed that if at any time the factory should resume full operation appellee should receive such compensation for his services as would be reasonable, and might be agreed upon; but that so long as only one tank was in operation, appellee should receive compensation at the rate of $1,500 a year, and no more. At no time was more than one tank in operation.

Appellant also pleaded that notwithstanding such parol agreement, appellee, without the knowledge or consent of the board of directors, received compensation for his services at the rate of $2,500 a year from March 1, 1910, to August 24, 1910, whereas he should have been paid at the rate of only $1,500 a year. That having been paid the sum of $83.33 a month for five months and twenty-four days, amounting to the sum of $483.31, in excess of the amount due him, appellee was indebted to appellant in said sum, which it asked to be made a counterclaim, and prayed judgment. Upon motion of appellee, appellant was required to and did paragraph the answer and counterclaim. Appellee then interposed a demurrer to the second paragraph of the answer and counterclaim, which was sustained. Thereupon appellant amended its answer and counterclaim by first pleading the parol agreement referred to in its original answer and counterclaim, and then alleging that the president arbitrarily and without authority ordered the secretary and treasurer of appellant company to pay appellee the sum of $208.33 a month from March 1 to August 24, 1910, which was $483.31 in excess of what was due. That under appellant's charter and by-laws the power to contract with agents, servants and employes was reserved to the board of directors, and that an order to so pay appellee made by the president to the secretary and treasurer was without the knowledge or consent of the board of directors of the company. It is then alleged that appellee is indebted to appellant in the sum of $483.31 for money overpaid to appellee. To this

amended answer and counterclaim a demurrer was also sustained. Thereupon, appellant filed a second amended answer and counterclaim, alleging in substance that the sum of $483.31 was paid to appellee pursuant to a fraudulent conspiracy entered into between appellee and the president of the company, and further that the payment was made by the secretary through a mistake of fact. To this second amended answer and counterclaim appellee's demurrer was overruled. Thereupon a reply was filed, denying its allegations.

A trial before a jury resulted in a verdict and judgment for appellee for the full amount sued for. From that judgment this appeal is prosecuted. The minutes of the meetings of appellant's board of directors show that on that on September 18, 1907, the following order was made:

"Geo. B. Harper made motion, and A. V. Hite seconded the motion, that F. J. Arbogast be employed at a salary of $2,500 a year as assistant to the president, with full charge of the force and affairs of the factory."

On December 28, 1907, the following appears in the minutes of the board of directors:

"At the request of Mr. Arbogast, it was moved that the salary of Mr. Arbogast be reduced from $2,500 to $1,500 a year when the plant is not in operation, to be resumed again when the factory is in operation. Motion carried."

The evidence for appellee shows that the factory was in operation during the eleven months that he claims salary for at the rate of $2,500 a year, and that he, during those months, performed all the duties devolving upon him. In the year 1910, appellee was discharged because he was claiming salary at the rate of $2,500 a year, when the factory was in operation, and this claim was recognized by the president of the company. Appellee and his witnesses state positively that no other agreement as to salary was ever made with the board of directors, or anyone acting for them, by which he was to receive only $1,500 per annum. It is further shown that while he was employed by the company, the company never did operate more than one tank at a time. For appellant, some three or four directors testified to a parol agreement made between the board and appellee that he should receive only $1,500 a year. when the factory was in operation. It is evident from the cross-ex-

amination of these directors that one or two of them refer to the agreement actually made on December 28, 1907, while others claim that the agreement was entered into at a different meeting. However, the fact that no such record appears upon any of the minutes of any meeting held by the board tends, to some extent at least, to support the evidence of appellee and of the president of the company, to the effect that no such oral agreement was ever made.

After evidence was heard, appellant filed another amended answer, pleading that in the fall of 1909, appellee entered into a subsequent parol contract with appellant, whereby he agreed that if the appellant resumed operation of its factory, he would continue in its service in the same capacity at a salary of $1,500; that the factory did resume operations, and he entered upon the discharge of his duties at said salary of $1,500 per annum.

The court instructed the jury as follows:

"No. 1. The court instructs the jury that if they shall believe from the evidence in this case that in September, 1907, the defendant made a contract with the plaintiff by which it agreed to employ him at a salary of $2,500 per year, and that subsequently, viz., on the 28th day of December, 1907, the salary of the plaintiff was reduced to $1,500 per year, while the factory was not operating, and to be raised again when the factory resumed work, then plaintiff was entitled to be paid at the rate of $1,500 per year while the factory was not operating, and at the rate of $2,500 while the same was operating, and they shall find for the plaintiff in the sum of $916.63, unless the jury shall further believe from the evidence that the plaintiff did agree with the defendant that on condition it resumed the operation of its plant, that he would work for defendant, at the rate of $1,500 per annum, then they should find for the defendant.

"No. 2. The court instructs the jury that if they shall believe from the evidence that after the plaintiff voluntarily agreed to a reduction of his salary in 1907, a subsequent contract was entered into between the plaintiff and the defendant, whereby he agreed to a permanent reduction of his salary to $1,500 per year, then they should find for the defendant.

"No. 3. Nine of the jury can make a verdict. If less than the whole number make a verdict, then those making the verdict shall sign it."

Appellant insists that the court erred in sustaining a demurrer to its answer and counterclaim, and amended answer and counterclaim, and in failing to submit to the jury the issue made by the amended counterclaim. Even if this be conceded, the error, if any, was not prejudicial; for the counterclaim, if it could be sustained at all, could only be sustained upon the assumption of a subsequent parol agreement on the part of appellee to continue working for the company at a salary of $1,500 per annum, whether the factory was in operation or not. In other words, if the contract between appellant and appellee was that he was to receive $2,500 per annum, to be reduced when the factory was not in operation, and to be resumed when it was in operation, he was entitled to be paid at the rate of $2,500 a year while the factory was in operation. On the other hand, if there was a subsequent parol agreement to the effect that he was to receive $1,500 per annum whether the factory was in operation or not, then his salary was limited to that amount, and he was not entitled to recover. This issue was fairly submitted to the jury by the foregoing instructions, and the jury found that no subsequent agreement was made. Had the issue of the counterclaim, therefore, been submitted to the jury, the verdict would have been the same, for the jury found, in effect, that there was nothing to support the counterclaim.

It is further insisted that the word "contract" in instruction No. 2 should have been qualified by the word "parol," and that the failure to insert the word "parol" was misleading. In view of the fact, however, that the record shows no subsequent contract, and that all the evidence was directed to proving a parol contract, and that this evidence was permitted to go to the jury, we fail to see how they could have been misled by the failure to insert in the instruction the word "parol." Nowhere were the jury told the subsequent contract had to be in writing, and as the word "contract" is broad enough to include both a contract in writing and by parol, we are unable to see any merit in appellant's conclusion.

It is also insisted that the evidence shows that during the two or three months in the summer of 1910, appellee was paid at the rate of $2,500 per annum, when as a matter of fact the factory was not in operation, and that the excess thus paid should have been offset against the amount of recovery. In the first place, no such issue was

presented by the pleadings, and while counsel for appellant claims that he offered an instruction on this point, no such instruction appears in the record. A judgment will not be reversed for a failure of the trial court to instruct the jury upon an issue not made by the pleadings, and upon which no instruction is offered.

It is further contended that the contract between appellant and appellee contemplated that appellee's salary should be restored to the sum of $2,500 only in the event that the factory resumed full operation, and as the evidence shows that appellant never at any time operated more than one tank, the conditions were never such as to authorize the payment of appellee's salary on a basis of $2,500 a year. The terms of appellee's employment being in writing, the interpretation of the contract was for the court. According to the order of the board of directors entered on December 28, 1909, appellee's salary was reduced from $2,500 to $1,500 a year when the appellant was "not in operation." The salary was to be restored to $2,500 when the factory was in operation. Appellant contends that "full operation" was intended. The language, however, is not susceptible of this interpretation. All that was necessary in order to entitle him to full salary was for the plant to be in operation. This is the interpretation placed upon the contract by the court. This interpretation is confirmed by the circumstances that after appellee came there was never but one tank in operation at one time.

As the issues involved were submitted to the jury by proper instructions, and we can not say that the verdict of the jury is flagrantly against the evidence, it follows that the judgment should be affirmed, and it is so ordered.