*34
 
 Ruffin, C. J.
 

 Although copies of the records of the judgments at law and the executions are not before us, yet it must be understood from the pleadings, that, at the lime Prather purchased from Brown, the house and lot were subject to the lien of a
 
 jfieri facias
 
 for this debt, and that the lien has been kept up ever since. For,
 
 & fieri fa* cias
 
 binds from its teste against a purchaser from the debt- or, and an alias and
 
 •pluries
 
 preserve the lien by relation to the teste of the first writ.
 
 Gilkey
 
 v.
 
 Dickerson,
 
 2 Hawks. 341 ;
 
 Brasfield v. Whitaker,
 
 4 Hawks. 309. Very clearly, then, the house and lot are liable at law to be sold on this process; and, indeed, the sole object of the defendant, Prather, in taking an assignment of the debt from the Bank, was, by his power over it, to prevent the law having its course. The question, then, is, whether there be any equity on his side to entitle him thus to deal with the pro* cess ; and we own, that we see none. At law the property is subject in the hands of Prather precisely as it would be in those of Brown. That is simply the nature and legal effect of the lien of an execution. It takes no notice of the debtor’s alienation, but considers the thing as still belonging to him ; and, consequently, it does not recognise any rights of the purchaser, as such, in the propertja Therefore the defendant Prather cannot allege, that, when he bought, he had no knowledge, that the execution was out or might be taken out of a
 
 teste
 
 elder than his purchase, although upon enquiry from the sheriff himself he received information, which’caused him to believe, that in fact there was no execution. For, every one is bound to take notice of a lien created by the law itself, and, above all, of that arising from a judgment and execution. This defendant, then, cannot claim the equity, which, in many other cases, is held to belong to a purchaser without notice. That doctrine applies, as a bar, only to relief which is sought, in respect of an equitable right asserted by the plaintiff. But with respect to the
 
 *35
 
 lien of executions, the whole is a matter of strict legal right, without any regard to the actual state of a person’s knowledge. If, instead of buying from Brown, and taking an indemnity from the sheriff, the defendant Prather had suffered the house to be sold under the executions in the sheriff’s hands against Brown alone, then he would have ■obtained a good title, although those executions might have been junior to this one of the Bank.
 
 Bell
 
 v
 
 Hill,
 
 1 Hay. 72.
 
 Ricks
 
 v.
 
 Blount,
 
 4 Dev. 128.
 
 Jones
 
 v.
 
 Judkins, 4 Dev.
 
 & Bat. 454. But, taking the course he did, the defendant cannot, as against the plaintiff, avail himself of the representation made to him by the sheriff, or of the application that was made of the price he paid. He was simply a purchaser from the debtor, of property, over which a
 
 fieri facias
 
 was then and still is impending; and it must be regarded here, as at law, as his folly or misfortune thus to have purchased. Prather therefore stands, in relation to the other parties and in reference to the lien, of the executions, precisely in the shoes of Brown. Now, clearly, the relation between Brown and the plaintiff was that of perfect equality; and that of the creditor towards both of them was that of equal benevolence. If Brown had contined to be the owner of the house, he would not only be bound to pay half the debt as surety, but, having no other property but the house, he would not be allowed, by collusion with the creditor, to acquire the control of the process and use it so as to exonerate the house from the lien of the execution, and thereby throw the whole of the debt on the co-surety, as a total loss. The creditor, it is true, may raise the debt from one of the sureties, as a legal right. So he may in equity, for any sufficient reasons growing out of his own interests. But he has no just right capriciously to deal with one of the sureties, so as to enable him to rid himself of the debt and make the other pay all j and equity will not sustain such dealing. It has been commonly said, that the equity be
 
 *36
 
 tween these parties arises out of a right of sureties to be subrogated to the rights and remedies of the creditor against the principal and co-sureties. This, of course, is ■equal in each of the sureties; and, hence, if one of two sureties pay half the debt, the creditor is a trustee of the security to that extent for him. But, when the other shall pay the other half, the creditor is in like manner a trustee for ‘him. Thus the sureties are brought to an -equality. But, if one of the sureties pay the whole debt,the]creditor thereby becomes a trustee of the entire security for him ; yet it is •subject, necesarily, to this provision, that the other surety may still place himself upon an -equality with the first by paying his half; and upon doing so, it would be contrary to the duty of the creditor to require him to pay more and -disturb the equality then existing between them. It can make no difference in the principle, whether the surety, who pays all the debt in the first instance, take an assignment to a trustee for himself or leave it with the creditor, as above supposed, for the assignee merely stands as the creditor did, and subject to all the equities, that existed a* ■gainst the creditor. But resort need not be had to the refined ■equity of substitution, in order to do justice between sureties ; for the doctrine of contribution between sureties is so well settled, as a substantive principle of equity, as to suffice to bring about the same end. Then, suppose a surety to have paid the debt and to have taken an assignment to . one to his use; it is clear, that he ought not to raise the whole sum from another surety; for, although he might at law do so on an execution, equity will restrain him at once, because he is liable to contribution in equity, and, to avoid circuity, the Court will prevent him from raising more than the half in the first instance. Suppose this plaintiff had taken an assignment from the Bank, with the view of selling the house, which Prather bought from Brown, for the whole debt. Although that could be done at law, Prather’s equity, as representing Brown and asa
 
 *37
 
 purchaser, would have been very clear, to restrain the other party to the one half, which ought justly to be raised out of that property. On the other hand, there is the same equity against Prather, that he should not levy the whole debt from Dobson, but that he should contribute-the half, for which the house might be sold. The Court holds, therefore-, that the injunction in this case was proper as to one half the debt, interest, and costs, and that to* that extent it was erroneous to dissolve it.
 

 But the Court likewise holds, that, as to- all but the one-half, the injunction ought to have been dissolved. The-grounds, on which relief is sought as to the other half,, are completely answered. As to the application of the-money arising from Waugh’s property, the question was. one properly for the Court of Law, and the plaintiff ought to have sought his redress there. But,, without recurring to that, the plaintiff ha» made no ease on the point; for he. does not specify the various executions and point out the misapplication of which he complains, and' he only alleges in general terms, that the money was improperly applied to younger executions. That is denied by the defendants in general terms also, and, besides, they say,, that the proceeds of the sale were distributed among the executions under the direction of an attorney, who represented the plaintiff as well as the sureties for the other debts.
 

 In like manner the other ground fails the plaintiff upon, the facts. The defendants deny, as far as they can, that Brown had engaged' with Waugh to pay this debt, or that he was indebted to Waugh at all. We need not, therefore, now enquire, what the equity"would be between the plaintiff and Prather, had there been such indebtedness or engagement on the part of Brown, unknown to Prather. Leaving that point, if there be any thing in it, for the hearing, if the plaintiff should think it worth his while to-proceed to proof on it, it is sufficient at present to say, that the facts are denied in the answers, as far as the de
 
 *38
 
 fendants know or believe
 
 ;
 
 and therefore the decree musíbe upon the supposition, that those facts do not exist.
 

 The decree must be reversed, with costs in this Court ; and the motion of the defendants for a dissolution of the injunction allowed, as to one half the sum due on the judgment
 
 ;
 
 and, as to the other half, the injunction must be continued to the hearing.
 

 Per Curiam.
 

 Decree accordingly.