CASE 116—ORDINARY—SEPTEMBER 17.

# Calloway v. Snapp, &c.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. The written consent of appellee, Mrs. Snapp, on the 12th of June, 1878, that Hopkins, the principal on the note, should be discharged in bankruptcy without paying the amount required by the bankrupt act, although withdrawn, on her motion, eight months afterwards, by order of the court having cognizance of the case, operated to discharge appellant, who was Hopkins' surety upon the note sued upon.

2. While the consent existed the surety was deprived of the power to protect himself, and the act of the obligee discharged him from all obligation as surety.

WM. LINDSAY FOR APPELLANT.

1. The material question is, whether, on the consent in writing of Mrs. Snapp to the discharge of Hopkins in bankruptcy, his action on the faith thereof, the action of other of his creditors induced thereby, varied the position of appellant with regard to his original liability.

2. It is insisted that it was a departure from the contract and increased his risk, and as a result released him from his obligation as surety.

VOL. LXXVIII.—36

(10 Hare, 653; 4 Mon., 443; Ib., 492; 5 Maryland, 109; 9 Wheat., 680; 3 J. J. Mar., 528; sec. 5112, Rev. Stat. U. S.; 9th ed. Bump on Bankruptcy, 722; *In re* Brent, 8 Bankrupt Reg., 444.)

CALDWELL & HARWOOD FOR APPELLEES.

1. The question is, whether the mere assent of the creditor that the principal debtor shall receive his discharge, and the withdrawal of that assent before it is made effective by any action of the bankrupt court, will release the surety.

2. The surety should not be discharged from the performance of his contract when he cannot show that it has been to the slightest extent modified by any agreement between the creditor and principal. (De Colyer on Guarantees, 401.)

3. A discharge of the bankrupt with the assent of appellee will not release the surety. (Sec. 5118, Rev. Stat. U. S.; 14 B. R., 477; 9th ed. Bump's Bankrupt Law, secs. 5118, 5110, 5114; 7 Bing, 508; McGrath v. Gray, 9 Com. Pleas, 216.)

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

Appellant was surety for one Hopkins on a note for $975, executed to Martha A. Duerson, now Mrs. Snapp, on the 16th day of February, 1875, and due one day after date.

April 6, 1878, Hopkins was, on his own petition, adjudged a bankrupt. April 22, 1878, Mrs. Snapp, with the consent of her husband, proved the debt against the bankrupt's estate; and June 12 of the same year, she, with like consent of her husband, signed a writing consenting to the discharge of Hopkins, without regard to the relative amount of his assets and the debts proved against his estate. Other creditors afterwards signed the writing consenting to his discharge, until the requisite one fourth in number and one third in amount was obtained.

The writing was then filed in court in the bankruptcy proceeding.

December 24, 1878, upon notice, Mrs. Snapp was permitted by the bankruptcy court to withdraw her consent. Hopkins has never been discharged.

The appellant claims that, on these facts, he is entitled to a judgment discharging him from liability as surety on the note.

Section 5112 of the Revised Statutes of the United States, as amended by the act of Congress of June 22, 1874, section 9, provided that, in proceedings commenced after January 1, 1869, no discharge should be granted to a debtor whose assets should not be equal to thirty *per centum* of the claims proved against his estate, upon which he was liable as principal debtor, without the assent of at least one fourth of his creditors in number and one third in amount.

Mrs. Snapp having proved the debt and united with other creditors to the requisite number and amount, removed the otherwise insuperable obstruction in the way of the discharge of the principal debtor on account of the smallness of his assets. Matters stood thus from June 22 to December 24.

The debt being past due, the appellant had a right to pay it at any time, and to take the place of Mrs. Snapp as a creditor in the bankruptcy proceeding; but taking her position, he would have been bound by her consent to the discharge precisely as she was herself bound.

It is said, however, that she had a right to withdraw her consent at any time before a discharge was actually granted, and whether she had such right or not, she did actually withdraw it with the consent of the bankruptcy court and without objection by the bankrupt, and thereby placed the surety in as good condition as he occupied before; and if he now pays the debt, he will have all the rights and remedies he would have had if Mrs. Snapp had never consented to a discharge.

It is well settled and undisputed law that a surety is only bound by the very terms of his contract; and that if the creditor does any act which, in contemplation of law, alters

the surety's liability, increases his risk, or deprives him, even for a moment, of the right to pay the debt and assume the position of the creditor, or of his right to seek indemnity, the surety is thereby discharged, and the fact that the surety may not have been actually injured is immaterial.

If the creditor had not given her consent to a discharge, the surety might have paid the debt, and, without doing any other act, his right to look to his principal for indemnity would have been complete. It is true the surety could not have proceeded at once against the principal. The bankruptcy proceeding was still pending, and a reasonable time in which to get a discharge had not yet elapsed, and no proceeding to recover the amount paid for him could then be maintained. But if no discharge was given him (and none could be given without the consent of the requisite number and amount of creditors, which he did not have without the name of Mrs. Snapp), the time would come when the bankruptcy proceeding would present no obstruction to a suit to recover the amount the surety had paid; but if it be conceded that Mrs. Snapp had the absolute right to withdraw her consent, and the surety, on paying the debt, would have the same right, he would still have been under the necessity to go into the bankruptcy court and ask to be allowed to withdraw the consent already given by her and filed in court. In other words, the creditor did an act which, if not undone, would deprive the surety of a right he would have had if the act had not been done; and the creditor permitted that act to stand for a period of six months, during which time the surety could not pay the debt and have the rights he would otherwise have enjoyed, without himself undoing the creditor's act. If he stood still, the principal would, or might be, discharged; but if

the creditor had not done the act, the surety might have paid the debt, and without any act on his part to prevent it, the principal could not be discharged, but would continue bound to reimburse his surety. This, if not an obstruction to the remedy of the surety, imposed upon him, if he exer-cised his right to pay the debt during the time elapsing between the giving and withdrawing of the creditor's con-sent, the burden of procuring the withdrawal of that con-sent. This burden may have been light, but it was just that much more than the contract of suretyship imposed, and was sufficient to discharge him.

It does not matter that the creditor has now removed that burden. The relation of the parties was such that the surety had a right to pay the debt at any time, and if the creditor, by her own voluntary act, placed him for a moment in a position in which he could not, upon paying it, have all the rights and remedies he would otherwise have had, or in which his burden was increased beyond the terms of his contract, he was discharged, and no subsequent act of hers could revive his liability. There is no *locus penitentia* in such cases.

Section 5118 of the Revised Statutes of the United States provided, that "no discharge in bankruptcy shall release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, surety, or otherwise;" and as the assent of creditors is one of the means by which a discharge may be obtained, it is claimed that a surety is not released, even though the cred-itor assents, and the bankrupt is discharged on account of such assent.

A discharge certainly will not of itself operate to release a surety, whether it be granted upon a surrender of the

requisite amount of assets, upon composition, or upon the assent of creditors.

But the statute does not undertake to declare what effect the acts of creditors before the discharge, or in aiding the bankrupt to obtain a discharge, shall have, and consequently the effect of such acts is left to be determined upon general principles.

Counsel cite Brown v. Carr (7 Bingham, 508; 20 Eng. Com. Law, 221); Megrath v. Gray (9 British C. L. R. Com. P., 216); and *ex parte* Jacobs (Chancery Appeal Cases, 211), as authorities for an opposite conclusion.

We have only the syllabus of the opinion in Brown v. Carr, which reads as follows:

"A surety for a bankrupt is not discharged by the creditor's signing the bankrupt's certificate, even after notice from the surety not to do so." Not having access to the English bankruptcy act, under which the decision was made, it is impossible to determine how far the decision in that case bears upon the question before us.

It seems that under the English bankruptcy act of 1869 a debtor may file his petition in court, stating that he is unable to pay his debts and proposing terms of composition; and thereupon a meeting of creditors is called, and if the requisite number vote to accept the offer, he becomes entitled to a discharge. In Megrath v. Gray and *ex parte* Jacobs it was held that such a proceeding was a proceeding in bankruptcy, and that an order of discharge did not release a surety, although the creditor attended the meeting and voted to accept the offer of the debtor.

But the reasons given by the court, especially in the latter case, for so holding, show that these cases are not authority

for holding that the consent of the creditor to a discharge under our bankruptcy act does not release the surety.

The statute made the creditors a tribunal to determine whether the debtor's proposition should be accepted. This is shown by the fact that the court held that that mode of proceeding was "a proceeding in bankruptcy" within the meaning of the bankruptcy act, and the creditors must be left free to vote as the judgment of each may dictate.

In the latter case the court said, in substance, that the consequence of holding that a creditor could not vote at a meeting of the creditors without discharging the surety would be, that in many cases a great number, and in some cases the majority, of the creditors could not vote at the meeting.

Under the English statute the assent of the prescribed proportion of creditors was necessary to secure to all the benefit of the composition offered by the debtor. The action of the creditors was a necessary step in the proceeding. It was *quasi* judicial, and it would have been unreasonable to hold that the exercise of the power was a release of the surety.

But under our statute the assent of creditors to the discharge of a debtor who has not surrendered the requisite amount of assets is mere matter of grace. It is not necessary to the completeness of the bankruptcy proceeding; is not in the interest of creditors generally, or even of those who give their consent; but is in the interest of the debtor alone, and to the prejudice of his creditors. We are therefore of the opinion that the action of Mrs. Snapp in consenting to the discharge of Hopkins was as effectual to release the surety as if she had undertaken by a valid agreement

not to sue on the note for a specified time or until after she should make demand of payment.

The judgment sustaining the demurrer to the answer is reversed, and the cause is remanded, with directions to over-rule the demurrer, and for further proper proceedings.