CASE 19.—ACTION BY HENRY BROUGHTON AGAINST ·S. W. SAYLOR AND ONE INGRAM, A CO-SURETY, ON A FORTHCOMING BOND FOR CONTRIBUTION.—May 28.

# B·oughton v. Saylor, &c.

Appeal from Bell Circuit Court.

M. J. Moss, Circuit Judge.

From a judgment dismissing the petition, plaintiff appeals.—Affirmed.

1.  Attachments—Liabilities on Bonds—Forthcoming Bond—Dis-

charge of Surety—Remedies Against Co-Surety—Estoppel by
Execution of Supersedeas Bond.—Plaintiff and defendant were
sureties on a forthcoming bond. Plaintiff subsequently became
a surety on a supersedeas bond given on an appeal by the
principals in the same action, and after the appeal was dis-
missed by the court, in proceedings against the sureties on
the forthcoming bond, plaintiff was required to pay the value
of the property for which the bond was executed. Held, that
he could not recover against defendant, since by the execu-
tion of the supersedeas bond the sureties on the forthcoming
bond were released.

2. Same—Solvency of Principals—Effect.—Whether the principles.
in the forthcoming bond were solvent would be immaterial.

3. Same—Co-Surety Advising Appeal as Attorney—Effect.—The
fact that defendant as attorney for the principals on a forth-
coming bond, advised an appeal, would not estop him from
interposing the defense that the execution of the supersedeas
bond released him from liability on the forthcoming bond,.
where he did not request or urge the execution of the super-
sedeas bond in his relation as surety on the forthcoming bond.

4. Same—Effect of Co-Suretyship on Forthcoming Bond.—The
fact that plaintiff was a co-surety of defendant on a forth-
coming bond did not affect the liabilities of either thereon,
where plaintiff subsequently signed a supersedeas bond in the
same action, and in proceedings on the forthcoming bond was
required to pay the value of the property for which it was
given.

N. J. WELLER for appellant.

It is shown in the record that appellant knew nothing of the
merits of the litigation and was taking the advice all along of
the appellee Ingram, and would not have signed either the forth-
coming bond or the supersedeas bond had it not been for the
request of said Ingram, and we submit that Ingram ought not now
be allowed to take advantage of his own wrong.

WM. LOW for appellee.

E. N. INGRAM of counsel.

AUTHORITIES.

1. 19 Ky. Law Rep., 1229; Brandenburg v. Flynn's Administra-
tors, 12 B. Mon., 397; Kellar v. Williams, 10 Bush, 216.

2. The following, while they have not been referred to or used in the brief, may be referred to as bearing on certain minor points in this cases. (84 Ky., 214; 89 Ky., 282.)

3. "Subrogation. A surety on a supersedeas bond, upon an appeal in an action based on attachment dissolved upon execution of a release bond, which supersedeas bond was entered into without the request of the sureties on the release bond, is held in Fidlity & Deposit Company v. Bowen (Iowa), 6 L. R. A., (N. S.) 1021, not to be entitled upon payment of the judgment after affirmance, by right of subrogation, to look to the sureties on the release bond of reimbursement."

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant and appellee Ingram were the sureties in a forthcoming bond executed by S. W. Saylor and Andy Broughton in February, 1904, in a suit of J. J. Durham against them. In October, 1904, judgment was rendered in the action in which the bond was executed against the defendants Saylor and Andy Broughton, who were the principals in the forthcoming bond. The defendants prosecuted an appeal from that judgment to this court, and executed in January, 1905, a supersedeas bond, with the appellant, Harry Broughton, and one Knuckles as sureties therein. Subsequently the appeal was dismissed by this court, and thereafter, in proceedings against the sureties in the forthcoming bond, Henry Broughton was required to pay the value of the property for which the forthcoming bond was executed. After Broughton satisfied the damages growing out of his suretyship in the forthcoming bond, he brought this action for contribution against his co-surety, Ingram. From a judgment dismissing his petition, this appeal is prosecuted.

There is some conflict in the evidence as to whether or not S. W. Saylor and Andy Broughton, the defendants in the action in which the forthcoming bond was

executed, had any property subject to execution at the time the judgment against them was rendered in October, 1904, or at the time the supersedeas bond was executed in January, 1905. But the weight of the evidence supports the conclusion that, soon after the execution of the forthcoming bond, they disposed of the property released by its execution, and had little or no property subject to execution either in October, 1904, or January, 1905. So that, if the judgment had not been superseded, it is fair to assume that Broughton and Ingram as sureties in the forthcoming bond would have been compelled to satisfy the same, and that neither of them could have collected the amount paid from the principals in the bond. If the principals in the forthcoming bond had been solvent when the supersedeas bond was executed, it is conceded that Broughton, as surety in the supersedeas bond,, could not look for contribution to Ingram as co-surety in the forthcoming bond, because the execution of the supersedeas bond would have been prejudicial to Ingram, in that it prevented him from looking to the principals for indemnity, or from having their property subjected to the payment of the amount due on the forthcoming bond. But, as this state of case is not presented, the question may be disposed of as if Ingram was not prejudiced, looking at the matter from a financial standpoint, by the execution of the supersedeas bond. The controversy then narrows down to the single question whether or not under these circumstances Broughton, by enabling the judgment defendants to stay proceedings upon the judgment, rendered himself liable for the full amount of the forthcoming bond.

If the supersedeas bond had not been executed, it is, of course, clear that Broughton as surety in the forth-

coming bond could recover from his co-surety, Ingram, one-half the amount he was required to pay. When the judgment was rendered in the lower court, the judgment creditor, except for the execution of the supersedeas bond, could have at once proceeded to collect his debt from the sureties in the forthcoming bond. And the sureties, if they had then satisfied the bond, could at once have proceeded against the sureties for indemnity; but the execution of the supersedease bond stayed all proceedings upon the judgment. It prevented any steps being taken to enforce its collection. Nor could the sureties in the forthcoming bond thereafter, or while the supersedeas was in force, take any action to protect their interests. And, when by the execution of the supersedeas bond Broughton obstructed the right of his co-surety in the forthcoming bond to take any steps to protect himself, he thereupon and by this act relieved the co-surety in the forthcoming bond from all liability to him for indemnity or contribution. The fact that Broughton was surety in the forthcoming bond, and that as such surety he was obliged to satisfy the judgment, does not affect the question, because if Ingram had been required to pay it, he might have recovered from Henry Broughton the amount he was compelled to pay. And so it follows that, having paid the bond, Broughton can not look to Ingram for contribution. If the judgment creditor had made any arrangement with the judgment debtors by which an extension of time was granted to them, or had placed himself in a position by which he was prevented from enforcing the collection of his debt, or had in any way interfered with the right of the sureties to protect themselves, his action would have released the sureties. Thus it is said in Sneed's Ex'r v. White, 3 J. J. Marsh. 525, 20

Am. Dec. 175: "Any settled agreement or active inter-
ference by the obligee whereby the surety may be
injured or subjected to increased risk or deprived of
or suspended in the assertion of his equitable right
to force the obligee to sue the principal, or of his right
to pay the debt and occupy the attitude in equity of
the obligee, will release the surety. Any act of the
creditor which entitles the principal obligor to indul-
gence after the debt shall have become due according
to the terms of the original contract will in equity dis-
charge a surety who has not consented to the indul-
gence, and his consent can not be inferred from his
silence or neutrality; but must be evinced by some
positive act. A stay of execution by the creditor after
a levy of it on the property of the principal debtor
will exonerate the surety. * * * It is not material
whether the property so exempted was sufficient to
discharge the whole debt or not. It is the fact that the
creditor interfered and thereby increased the risk of
the surety, and not the extent of the injury resulting
from his act which will relieve the surety from his
liability in equity. To make the right to relief depend
on the degree of injury would, in the language of
Loughborough in Rees v. Barrington, 2 Ves., Jr., 543,
'lead to a vast variety of speculations upon which no
sound principle could be built.'" The principle
announced in this case has been approved in a long
line of decisions, among which may be noticed Preston
v. Henning & Speed, 6 Bush,556; Mayes v. Lane, 116
Ky. 566, 76 S. W. 399, 25 Ky. Law Rep. 874; Struss
v. Masonic Savings Bank, 89 Ky. 61, 11 Ky. Law Rep.
533, 11 S. W. 769, 12 S. W. 266; Tudor v. Goodloe, 1
B. Mon. 332; Ross v. Clore, 3 Dana 189; Sparks v.
Hall, 4 J. J. Marsh. 35.

In our opinion, when Broughton by the execution of

the supersedeas bond prevented the judgment creditor from collecting or attempting to collect his judgment, it had the same effect on the sureties in the forthcom ing bond as similar conduct on the part of the judgment creditor would ·have, and resulted in releasing so far as Broughton was concerned the surety in the forthcoming bond. We are unable to perceive any substantial difference between the legal effect of an obstruction of or interference with the rights of the surety by the creditor and an obstruction or interference with the rights of the surety by the act of another person who might otherwise have looked to the surety for contribution or indemnity if there had been no obstruction. In either case the injury to the surety is the same. In Brandenburg v. Flynn's Adm'r, 12 B. Mon. 397, an execution against Tracy was replevied with Hulsey and Joseph Brandenburg as sureties. Afterwards the execution defendant, Tracy, enjoined the collection of the debt, and executed an injunction bond with Flynn as surety. Flynn, being compelled to pay the debt, brought an action against Brandenburg, the surety in the replevin bond, seeking either reimbursement or contribution. In considering the case, and denying the relief sought, the court said: "We know of no case in which on the ground of either contribution among co-sureties or of substitution to the securities ·of the creditor, a subsequent surety, coming in aid of the debtor alone, without request or concurrence of the original sureties, and in the regular course of the remedy for coercing the debt from him alone, or for the purpose of obstructing its collection by his own separate proceeding, and for his own benefit, has obtained in equity either partial or full reimbursement from the prior sureties. On the contrary, the doctrine established by the adjudged cases,

and as we think in conformity with the true principles of equity, is that, if under such circumstances a prior surety is compelled to pay the debt, he thereby becomes entitled by substitution to the rights of the creditor against the subsequent surety to the whole extent of the payment made and of the obligation of the subsequent surety, which precludes all right on the part of the subsequent surety, should the debt be coerced from him, to claim reimbursement from their prior surety." In Kellar v. Williams, 10 Bush, 216, an execution against Mount was replevied by him with Williams as surety. Upon the maturity of the bond, and after an execution had issued thereon, Mount prosecuted an appeal from the judgment upon which the execution issued, and executed a supersedeas bond with Kellar as surety. The judgment of the lower court having been affirmed, Williams was required to pay the debt, and thereupon brought an action against Kellar to recover the full amount so paid. In the opinion holding that Williams was entitled to the relief the court said: "The doctrine of substitution is founded alone upon principles of equity and justice; and, when this debt was in a condition to be made out of the property of the principal debtor, Kellar interposed his conditional obligation to pay the money, thereby causing this loss to Williams; and there is no reason why equity should not intervene by substituting Williams to the rights of the original creditor, so as to enable him to compel Kellar to pay only what he had undertaken by his conditional obligation to pay." It is true that in these cases the rights of the prior sureties were prejudiced by the execution of the bonds delaying the collection of the debts, as when the delay bonds were executed the principal debtors had property out of which all or a part of the debts might have

been paid. But the decisions are not rested distinctly upon the ground that the rights of prior sureties were obstructed by the execution of the subsequent bonds.

The solvency or insolvency of the judgment debtors, who were principals in the forthcoming bond, does not enter into the case. It is not material whether they were solvent or not. We think this case should be governed by the same principles that apply as between a creditor and a surety. If the judgment creditor in this case had put it out of his power to collect or attempt to collect his judgment, it is manifest that his act would have released the sureties in the forthcoming bond, and this without reference to the solvency or insolvency of the principals in the bond. And so, when Broughton executed the supersedeas bond, the extension of time that was granted the judgment debtors by the execution of this bond released from liability as to him the sureties in the forthcoming bond. His act effectually stayed all proceedings upon the judgment, and prevented the judgment creditor from collecting his judgment, and also hindered the sureties in taking any steps to protect their interests. The execution of the supersedeas bond was an independent act upon his part, by which he assumed unequivocally the payment of the debt in the event the judgment should be affirmed. Ingram did not request or procure the execution of the supersedeas bond, or waive his right to insist that its execution relieved him from liability. Ingram was one of the attorneys for the defendants in the judgment, and there is evidence tending to show that as such attorney he believed the judgment could be reversed, and, entertaining this opinion, he advised an appeal and probably the execution of a bond to stay proceedings upon the judgment pending the appeal. This advice was tendered in his

capacity as attorney. He did not request or urge the
execution of the supersedeas bond in his relation as
surety on the forthcoming bond, and his action as
attorney did not have the effect of estopping him from
interposing the defense that the execution of the su-
persedeas bond released him from liability in the forth-
coming bond. If, as surety in the forthcoming bond,
he had requested or procured Broughton to execute
the supersedeas bond, it might be urged with great
force that he would be jointly and equally liable with
Broughton, upon the principle announced in the Bran-
denburg and Kellar Cases, supra, that ''all persons
who are bound, although by different instruments,
executed at different times, for the same debt or duties
of the same individuals, are bound as co-sureties to
contribute to any loss which either may sustain.'' But
this rule has no application to the facts of this case;
nor does the circumstance that Broughton was a
surety in the forthcoming bond enter into it in con-
sidering the rights and liabilities of either Ingram or
Broughton, because Broughton in signing the super-
sedeas bond occupied as to the forthcoming bond the
same relation as a stranger would, and is in no better
position than any other person would be who had
signed as surety the supersedeas bond.

Wherefore the judgment of the lower court is
affirmed.