## Pond Creek Coal Company v. Citizens Trust & Guaranty Company.

(Decided June 6, 1916.)

### Appeal from Pike Circuit Court.

1. **Principal and Surety—Release of Surety—Contracts.**—A surety has a right to insist on a strict performance of the contract which he secures, and although this rule may not apply with the same strictness to a paid surety as it does to a voluntary one, the paid surety will be released unless there has been a substantial performance of his contract by the one secured.

2. **Principal and Surety—Release of—Contracts.**—Where the owner in a building contract agreed to retain 10 per cent. of the contract price until after the work was completed and to require of the contractor statements of material used and labor performed before paying any part of the 90 per cent. as the work progressed and

to require these statements to be verified by the contractor if it pays the entire contract price before the completion of the work and without demanding such statements from the contractor, the surety of the contractor will be released.

AUXIER, HARMON & FRANCIS for appellant.

J. J. MOORE and GOODYKOONTZ & SCHEER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS.—Affirming.

The appellant, Pond Creek Coal Company (whom we shall refer to as plaintiff), on the 2nd day of June, 1913, entered into a written contract with W. A. Liller (whom we shall refer to as the contractor), by which the contractor undertook to construct for the plaintiff a number of residences for the use of the hands engaged in and about the mining plant of plaintiff. The total sum which the contractor was to receive for doing this work was $200,000.00, and he was to have it completed by the first day of the following January. Under the contract payments were to be made to the contractor by the plaintiff as the work progressed in stipulated installments but not to exceed in the aggregate 90 per cent. of the contract price, the remaining 10 per cent. to be due and payable thirty days after the completion and acceptance of the work. It was agreed that the plaintiff should have the right at any time after as much as 20 per cent. of the work had been finished, or commenced and under way, to cancel the contract, but in the event it should do so, it agreed to take all of the remaining material which the contractor had purchased at the cost price. After the contractor had completed a number of the houses and had commenced the construction of others, which, when completed, together with those already completed, would cost under the contract price the sum of $172,843.87, the plaintiff notified him that it would not require the entire number of houses to be constructed but would excuse him from further work under the contract after the completion of those under process of construction. The payments to be made as the work progressed were stipulated to be for materials necessary to the construction of the buildings and for labor in doing the work.

Among the various stipulations in the contract we find the following:

"The contractor shall furnish the architects with duplicate bills of all materials received, to the date upon which payment is based, ten days before he shall be entitled to demand any payment for said materials."

And also this one:

"It is further agreed by the parties hereto that in all cases before the contractor shall be entitled to demand or receive payment for the said work or materials or any portion thereof, done or furnished under this contract, he shall produce at any time on demand of the owner written statement giving the names and address of all parties furnishing materials or labor and the amount due or to become due, and said written statement shall be under oath and verified by the affidavit of the contractor."

And further:

"It is hereby agreed that the owner shall furnish the contractor with duplicate bills of all materials so purchased, and the contractor hereby agrees to furnish owner with duplicate bills of all materials purchased by him from any other person than the owner."·

And the still further one:

"The contractor further agrees to deliver said houses to the owner free from any and all liens of any kind, either on material or labor furnished, and agrees to furnish the owner with duplicate receipted bills of all materials purchased by him from persons other than the owner, and the owner reserves the right to at any time refuse to pay the amounts provided to be paid for materials, unless said receipted bills are delivered to it before said payments are due.

"It is further agreed that upon completion of the work and before payment of any balance due the contractor which may have been withheld as security for the faithful fulfillment of this contract or otherwise, the contractor shall produce and deliver to the party of the second part, a full and complete release from all persons who have furnished materials or labor in connection with the making of improvements or the construction of buildings contemplated hereunder. And shall execute any and all affidavits which the owner may require touching on the right of any party or parties whomsoever to have or to obtain a lien or liens upon said improvements or land upon which same is situated as a result of any materials furnished or labor done in connection with said improve-

ments. And the contractor further agrees that he will submit his labor payrolls to the auditor of the Pond Creek Coal Company for his inspection at any and all times he may be requested or required to do so, and produce and deliver to the auditor of the owner for his inspection receipts for all amounts paid for labor.''

It was agreed in the contract that the contractor should execute bond to the plaintiff guaranteeing the performance of the contract on his part, which he did with the appellee (defendant) as his surety. The bond was for the total sum of $30,000.00, and it was agreed therein as follows:

"The obligee herein shall keep and perform said contract upon its part. If, at any time, it appears that the above named principal has abandoned the work, or will not be able, or does not intend, to carry out said contract as and within the time specified, the obligee shall, within a reasonable time, not exceeding ten days, so notify the surety in writing, by registered mail, prepaid, addressed to the surety at its principal office in Parkersburg, West Virginia, and the surety, at its option, shall have the right to assume said contract and to sublet or complete the same, and to use, in so doing, all the plant, equipment and machinery of the principal, and thereafter all moneys due or to become due, including percentages provided to be withheld by the contract, shall, as the same become due, in accordance with the terms of the said contract, be paid to the surety, and the surety shall be subrogated to all the rights of the principal.''

On April 30, 1914, this suit was brought against the contractor and the defendant as surety on his bond, seeking to recover the sum of $14,104.64. This amount was arrived at by alleging that plaintiff had paid to the contractor as the work progressed and up to its completion, after the notice mentioned, the sum of $193,948.51, which it averred was $21,104.64 above the contract price; that it credited the contractor with $14,000.00 worth of material which he had on hand at the time it notified him to construct no more buildings, which sum, deducted from the alleged excess value of the work, left $7,104.64. It alleged that afterwards it had to pay for threatened labor liens the sum of $7,000.00, which, with the excess payment, after a credit for the material, made up the sum sued for. The contractor was not served with process, but the defendant surety company interposed a demurrer to

the petition as amended, which was sustained and the petition dismissed. Complaining of this judgment, the plaintiff prosecutes this appeal.

The ruling of the court in sustaining the demurrer was made because it found that the plaintiff had violated the terms of the bond which the defendant had executed to it.

The general rule is that the party secured or guaranteed must exercise the utmost good faith in all of his dealings with the principal obligor and strictly comply with the terms of the contract secured, and any failure on his part to do this will result in a release of the surety. This general rule is stated in Brandt on Suretyship and Guaranty (Third Ed.), Vol. 1, section 106, to be:

"A rule never to be lost sight of in determining the liability of a surety or guarantor is, that he is a favorite of the law and has a right to stand upon the same strict terms of his obligation, when such terms are ascertained. This is a rule universally recognized by the courts, and is applicable to every variety of circumstances."

And in Pingrey on Suretyship and Guaranty (Second Ed.), section 112e:

"It may be stated generally that where the contract provides the manner in. which payment shall be made there should be a compliance therewith. If the contract provides that payments are to be made at stated periods dependent upon the progress of the work or are to be withheld under certain designated conditions a surety has a right to insist that such provisions shall be complied with and will be released where there has been a material departure therefrom to his injury, in the absence of acts on his part which will operate as an estoppel."

It is unnecessary to encumber this opinion by authorities, either text writers or courts, to substantiate these general statements of the rule. It is sufficient to say that they are of one accord in this respect, and the opinions of this court are in perfect harmony with the rule as stated. We find it so in the case of Calloway v. Snapp, 78 Ky. 561, where it is said:

"It is well settled and undisputed law that a surety is only bound by the very terms of his contract; and that if the creditor does any act which, in contemplation of law, alters the surety's liability, increases his risk, or deprives him, even for a moment, of the right to pay the debt and assume the position of the creditor, or of his

right to seek indemnity, the surety is thereby discharged, and the fact that the surety may not have been actually injured is immaterial.'' (See also Commonwealth v. Bacon, 33 Ky. Law Rep. 935; Graziani v. Commonwealth, 30 Ky. Law Rep. 119; Sneed's Exor. v. White, 3 J. J. Mar. 526; Illinois Surety Co. v. Garrard Hotel Co. (Ky.) 118 S. W. 967; Elsey v. Peoples Bank of Bardwell, 166 Ky. 386.)

Under this rule it is held by many courts that any changes or alterations in the contract between the principal and the person secured will release the surety or guarantor, whether such changes or alterations are material or not. This is because of the rule that the surety has a right to rely upon the strict letter of his contract. It is insisted that this strict rule applies only to voluntary sureties and is not to be enforced with the same rigorous strictness in behalf of a paid surety or guarantor. In support of this contention we are referred to the cases of Rule, et al. v. Anderson, et al., 142 S. W. (Mo.) 338, and Boppart v. Surety Company, 126 S. W. (Mo.) 771.

We are not disposed to question the soundness of this distinction. The reason for the application of the rule in all of its strictness does not exist in the case of a paid surety as it does in the case of a purely voluntary one. In the former there are no equities which the surety may demand at the hands of the court further than that the terms of his contract should be construed and applied as those of any other contract, but this exception to the general rule does not go so far as to allow material changes, alterations or non-observances of the contract to be made without the knowledge or consent of the surety, without releasing him. See authorities, *supra,* and Prairie State Bank v. United States, 164 U. S. 227; Greenville v. Ormand, 51 S. C. 121.

In the case now before us the plaintiff agreed with the defendant in the bond which the latter executed to it, that it would ''perform the terms of the contract (which the defendant guaranteed) on its part.'' One of the terms of the guaranteed contract which it thus agreed to perform was, that it would not pay to the contractor until after the work was completed exceeding 90 per cent. of the contract price, and that the 10 per cent. to be retained was ''withheld as security for the faithful performance of this contract.'' It was further provided in the guaranteed contract that the contractor should furnish to plaintiff

statements for material and payments for labor as the work progressed, and that these should be verified by his affidavit, and, in substance, that the plaintiff should in no event make payments beyond the aggregate amount of these statements. It was the unquestioned duty of plaintiff under the terms of the obligations which defendant assumed in its contract with plaintiff as the surety of the contractor, to at least substantially observe these stipulations. Under the averments we are not informed as to whether the contractor was required to furnish the required statements as the work progressed and as payments were made, but the inference is that no such requirement was exacted of the contractor. It is expressly alleged that the entire contract price was paid without retaining the 10 per cent., which was directly in violation of the express contract rights of the defendant. It was further stipulated in the surety contract, in substance, that if at any time it should appear that the contractor would not be able to carry out the contract, the plaintiff would notify the defendant as his surety not exceeding ten days after such discovery. This it wholly failed to do, and it will not do for it to say that it failed to discover wherein the failure of the contractor was likely to occur, for the contract provided it with the method by which it could have made such discovery, it being the furnishing of the verified affidavits as to material purchased and labor performed. If these requirements had been insisted upon by the plaintiff it would have been an easy matter for it to have ascertained that the plaintiff was not going to be able to carry out his contract, and the defendant could have been notified and it perhaps could have taken steps to have completed the buildings in accordance with the terms of the contract and perhaps without loss. Whether it could have done this or not, is not necessary to be determined, because it had a right under the terms of its contract to be given the opportunity to do so. It requires no calculation to show that if the 10 per cent. of the contract price had been withheld, as it was the duty of plaintiff to have done, this would have amounted to more than the sum sued for.

It is insisted, however, that the contract was taken too cheaply by the contractor and that it was impossible for him to have constructed the buildings for the price agreed upon, and that all of the money which the plaintiff paid out was invested either in labor or material, and none

of it was misappropriated by the contractor. For the purposes of this case, although it smacks very largely of a conclusion, this may be admitted, still it can not alter the legal rights of the defendant under its contract; for, as we have seen, if the plaintiff had performed its part of the contract and notified the surety before paying out the money, that the expenditures were exceeding the contract price, it would have been given an opportunity to exercise its right to finish the contract itself, which it might have been able to do for the price agreed upon. But it is insisted that the principle laid down in the case of Mayes, &c. v. Lane, &c., 116 Ky. 566, is applicable here, and that under the ruling of that opinion the judgment should be reversed. We do not agree to this. The facts of the two cases are essentially different. It is shown in that case that the reserve part of the contract price, which was 15 per centum thereof, was not paid until after the contractor had abandoned his contract, nor did there exist in that case an obligation on the part of the owner to see to the application of the portion of the contract price to be paid during the progress of the work, which was 85 per cent.

This fact is stated in the opinion in this language:

"The parties agreed that Lane (the contractor) was to draw 85 per cent. of the contract price for the purpose of paying his accounts for material and labor, and it may be added here that the church (the owner) was under no obligation to see to the application of the 85 per cent. to the discharge of such debts."

It is true that the remaining 15 per cent. was expended by the owner in completing the contract after the contractor had abandoned it, and the sum which the sureties were called upon to pay by the suit was that due to the materialmen and laborers used and appropriated by the contractor before he abandoned the work. If the church in that case had been obligated to the surety that it would demand of the contractor statements from him concerning material and labor before making payments to him, as was the plaintiff obligated to the defendant in this case, we have no doubt but that the opinion would have been different.

We conclude, then, that the plaintiff violated material portions of its contract, each of which had for its primary object to insure compliance with the contract by the contractor, and that by so doing, it released the surety.

It results, therefore, that the judgment in sustaining the demurrer to the plaintiff's pleadings and dismissing the same, after refusal to further amend, should be, and it is affirmed.