## Darland v. First National Bank of Springfield.

(Decided October 19, 1917.)

### Appeal from Washington Circuit Court.

Principal and Surety—Release of Lien or Levy on Property of Surety—Release of Co-surety.—Where a creditor having an execution lien on the property of a surety, discharges the lien, or after the levy of the execution, notifies the sheriff to take no further steps, and thereby loses his lien, a co-surety is discharged to the extent of the equitable proportion of the debt due from him whose property is released, which as between the two is one-half of the execution debt and costs, and to this extent the co-surety so discharged may enjoin the collection of the judgment on which the execution issued.

POLIN & POLIN for appellant.

J. H. McCHORD for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Plaintiff, Martin Darland, brought this suit against the First National Bank of Springfield, Ky., to enjoin

the collection of a judgment by execution on the ground that the judgment had either been paid or he as surety had been released from liability by the acts of the bank. On final hearing his petition was dismissed and he appeals.

Briefly stated, the facts are as follows: In February, 1915, the bank recovered a judgment for $790.00 on a note executed by Turner Derringer as principal, with Wm. Derringer, S. P. Derringer, and appellant as sureties. Before the expiration of ten days, the bank's cashier made affidavit for the immediate issual of an execution. Thereupon execution was issued March 1st, 1915, and placed in the hands of the sheriff, who at the direction of the bank's attorney, sent it to his deputy, Hale, for the purpose of levy. According to the evidence of the bank's attorney, he directed Hale to return the execution to the circuit clerk's office without action. On March 24, 1915, the sheriff went upon the land of William Derringer, and after reading the execution to him, told him that he was there to make the levy, took down the boundary and number of acres on a slip of paper and put it with the execution. Thereafter the bank's attorney told the sheriff to stay the proceedings on the execution. The sheriff took no further action until some time in November, 1915, when he made a return on the execution and dated it March 24, 1915. About November 20, 1915, Wm. Derringer sold the land levied on by the sheriff to Dr. J. C. Mudd. At that time the bank had four other executions on the land. Other parties had liens on the land for small amounts. In closing the transaction between Wm. Derringer and Mudd, the priority of these liens was discussed by the parties. The transaction was closed by the bank's agreement to discount the notes for the purchase money. Derringer was allowed $1,000.00 as a homestead, and the balance of the purchase money was applied to the payment of liens in favor of other parties, and to other claims of the bank on which appellant, Darland, was not surety. One of these was a claim of $936.21, on which Wm. Derringer was surety for J. E. Derringer, and which had not then matured. After the deal was closed, the bank's attorney requested the sheriff to amend his return on the execution in question. Thereupon the sheriff amended his return as follows:

"On or about the 24th day of March, 1915, said deputy, Hale, returned said execution to me without any endorsement thereon, and on March 24, 1915, I went on the land

herein mentioned and I notified the defendant, Wm. Derringer, that I had levied said execution on 38½ acres of land mentioned in the original return.   I did not make an endorsement of any levy on the execution at the time, but I did make a memorandum on a slip of paper in substance as follows: 'Levied this *fi fa* on 38½ acres of land as the property of Wm. Derringer.'   Said memorandum was not signed by me, nor was it attached to this execution.

"Some time after this W. C. McChord, attorney for plaintiff in said execution, notified me not to take any further action on said execution, and therefore, in obedience to said instruction, I took no further action.   Thereafter the slip of paper on which I had made the memorandum was thrown away, and thus the execution remained in my hand until on or about November 13, 1915, when I learned that Wm. Derringer was making some arrangements in regard to his debts and I believed if I did not make some sort of endorsement on said execution I would lose my right to fees or commission for handling said execution, and for that purpose on the 13th day of November, 1915, I had Robert Noe, clerk of the Washington circuit court, to write the return on said execution as thereon endorsed, and had it dated March 24, 1915, when, in fact, said endorsement was not made until November 13, 1915, and said execution was returned to the office of the clerk of the Washington circuit court on the 20th day of November, 1915.   This the 18th day of January, 1916."

It further appears that on March 15, 1915, C. M. McChord, a son of the bank's attorney, employed to do clerical work in his father's office, filed a *lis pendens* notice of the execution in the county clerk's office and signed the names of the bank and its attorney thereto.   There is evidence to the effect, however, that C. M. McChord was not the agent of the bank and that the notice was filed without the knowledge of his father.

It clearly appears in this case that the land of Wm. Derringer was of sufficient value to pay his homestead claim and all valid liens thereon, including the claim of the bank under the execution in question.   For the purposes of this case we deem it unnecessary to determine whether the bank had a valid execution lien for the debt in question on the property or not.   It conclusively appears that the land was actually levied on by the sheriff, and one of two things is certain, the bank either had a valid execution lien thereon by virtue of the levy and re-

turn by the sheriff, or it lost that lien by directing the sheriff, after the levy had been made, not to take any further steps in the matter. If the execution lien was valid, it was discharged by the bank when the sale was made, with the agreement in which it participated, that all liens thereon should be discharged. In the case of Mt. Sterling Improvement Company v. Cockrell, 70 S. W. 842, we held that, where, after an execution had been levied on land of the principal debtor sufficient to satisfy the judgment, the creditor directed the sheriff not to proceed therewith, and, by reason of the negligence either of the creditor or the sheriff, the lien was lost, sureties previously liable for the debt were thereby discharged. And in the case of Martin v. Taylor, 8 Bush 384, it was held that, one defendant, a surety, in an execution was released from liability to pay the plaintiff, by the plaintiff's ordering the return of the execution, after it had been levied on sufficient property of the co-surety who had agreed to pay the whole debt. This, however, is not a case of the release of the levy of the property of the principal, without the consent of the surety. In such a case, the surety is discharged, and it is immaterial whether the property released from levy was sufficient to discharge the whole debt or not. Elsey v. Peoples Bank of Bardwell, 166 Ky. 386. This is a case where a levy was made on a co-surety's property and afterwards either the lien was discharged or the levy released by the act of the creditor. In such a case the discharge of the lien or the release of the levy merely relieves the other co-surety to the extent of the proportion of the debt equitably due from him whose property was released. Lower v. Buchanan Bank, 78 Mo. 67; Rice v. Morton, 19 Mo. 263; Dobson v. Prather, 41 N. C. 31. As between themselves, appellant and Wm. Derringer whose property was released, were equally liable to the bank, and appellant having been released from all liability to pay Wm. Derringer's one-half of the execution debt, interest and costs, it follows that his prayer should have been granted to that extent.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.