## Rommel Bros. v. Clark et al.

(Decided May 11, 1934.)

(Rehearing Denied Oct. 12, 1934.)

EUGENE R. ATTKISSON for appellants.

TRABUE, DOOLAN, HELM & HELM and GILBERT BURNETT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In the year 1925, or 1924, the appellants and plaintiffs below, Rommel Brothers, a partnership, composed of Daniel and Edward Rommel, contracted with the Citizens' Hotel Company, a corporation in Louisville, Ky., to construct the Kentucky Hotel for a consideration of about $2,000,000. The work progressed until the building was nearly finished in December, 1925, when the contractors made a demand of the Hotel Company for the payment of $71,000, the whole of which it did

556

not at that time possess. During the progress of the construction the appellees and defendants below, G. M. Clark and W. K. Stewart, with Carl M. Wiseman (now deceased), were stockholders and directors in the hotel company, and before or at the time of the beginning of the work, they were made members of an executive committee to raise finances and provide ways and means to complete the construction of the hotel building. Since then Wiseman died testate, and John M. Scott qualified as executor of his will and he, as such fiduciary, was made a defendant in this action jointly with Clark and Stewart. When the $71,000 was demanded by plaintiffs of the Hotel Company, the members of the executive committee, and perhaps the directors of the Hotel Company, held meetings to discuss ways and means to meet the demand and finally concluded to submit to plaintiffs this proposition: That the Hotel Company would pay plaintiffs $21,000 cash and execute its notes for the other $50,000 with the members of the executive committee as accommodation makers, the total amount being divided into a note for $10,000 payable in thirty days, one for $20,000 payable in sixty days, and the third one for the same amount payable in ninety days. That proposition was in the form of a resolution and was adopted on December 9, 1925. It was submitted to plaintiffs and they accepted it. A part of the resolution so accepted by plaintiffs said: "W. K. Stewart, George M. Clark and Carl M. Wiseman have agreed to sign said three notes as joint accommodation makers with the understanding and agreement that the mechanic's lien of said Rommel Brothers shall be preserved *and enforced* for the benefit of said accommodation makers in the event they or any of them pay said accommodation note or any part thereof for the benefit of this company." (Our italics.) We will refer to it herein as "document No. 1."

Two days thereafter (December 11, 1925) three other documents were executed, one of which (No. 2) submitted to plaintiffs the proposition contained in document No. 1 and in which it was stated: "We agree that you shall take these notes without prejudice to your right to claim and enforce a mechanics lien for the amount evidenced thereby for your own benefit or for the benefit of said accommodation makers in the event they are called upon to pay said notes." Document No. 3 was and is a receipt by plaintiffs, executed to the

Hotel Company for the $21,000 cash and for the notes executed as agreed upon, and a part of it stipulated "that the payment as aforesaid is made without prejudice to the rights of either party as may be determined upon a final audit of our account against you [Rommel Brothers] now in the hands of your architect for approval."

Although it is controverted, we are convinced that document No. 4 was the last one executed. It bears the same date as Nos. 2 and 3 (December 11, 1925), and is in the form of a communication to the Hotel Company from the contractors and in which is found this qualifying language:

"Now, the undersigned, Rommel Brothers, do hereby agree that if said three accommodation makers, or any one of them shall pay said notes or any of them or any part thereof, the undersigned will at the request of said payors, or payor *enforce* mechanic's and materialman's lien of said Rommel Brothers against the Kentucky Hotel, the property of said Citizens Hotel Company, for the benefit of said payors or payor; but all said proceedings for the use and benefit of said payors or payor to be at the cost of said payors or payor and in such manner as they may direct by counsel to be selected by them.

"It shall be incumbent, however, upon said payors or payor to notify the undersigned of all steps that said payors or payor desire to be taken in the matter of *enforcement* of said mechanic's lien for their benefit; and if the right to enforce said mechanic's lien shall be lost by lapse of time or in any other manner, the undersigned shall be under no liability to said payors or payor, but the undersigned agree that they will not take any steps which will impair the rights of the payors or payor in the premises." (Our italics.)

We are convinced that at the time of the preparation and delivery of that document the notes had already been executed and delivered as agreed upon; but whether so or not, and conceding for the purposes of this case that each of the documents bearing date of December 11, 1925, was simultaneously executed, or that the last one (No. 4) preceded the others, then the legal questions in the case would not be materially altered. Plaintiffs discounted the notes at a bank and payments

were made upon them until in March, 1926, when the time to file the mechanic's lien under the statute, so as to preserve it for the benefit of those entitled to it, was about to expire. On the last day for that to be done plaintiffs took the necessary steps to perfect their lien for an amount, as contained in the statement, of $103,-267.20, but they subtracted from the balance they claimed to be due them under the contract, the sum of $32,600, representing the unpaid part of the three notes above referred to and which in the meantime had been reduced to that sum. Additional payments were made thereon until September 7, 1926, when the indebtedness was reduced to the sum of $16,000, for which a renewal note was given signed by the same parties.

This is an action by plaintiff against defendants, filed in the Jefferson circuit court to recover the amount of that note. Various defenses were made, one of which was that after the note sued on was executed, and in an action of creditors against the Hotel Company to which plaintiffs were made parties, plaintiffs agreed and stipulated therein, in consideration of the payment to them by a subordinate lienholder of $16,000 in cash, to release their entire lien against the building and which agreement was carried out without the knowledge or consent of defendants herein as accommodation makers of the note sued on. It was first alleged in the answer as a part of this particular defense that plaintiffs failed to perfect any lien by filing the proper statement before the county court clerk within the time allowed by statute and thus neglected to carry out the agreements and understandings set forth in the documents supra. But that phase of the defense seems to have been abandoned, and reliance was exclusively made on the fact that either plaintiffs did not include the indebtedness sued on in their lien statement filed with the county court clerk or if they did include it they violated their agreement to preserve the lien for the benefit of defendants when they released it for the consideration named. But it is our conclusion that the legal effect is the same whichever of them may be true. Following pleadings made the issues and upon final submission the petition was dismissed and from that judgment plaintiffs prosecute this appeal. In discussing the questions presented in appellants' brief as grounds for reversal, we will make our own arrangement as to the order in which they are done, and dispose of them accordingly.

It is first insisted that defendants, because they were members of the executive committee, are not technical accommodation makers, but that they are joint principals with the Hotel Company and that the amount represented by the note was and is their joint debt, and for which reason they are not entitled to rely on the equitable defense interposed, i. e., that plaintiffs suffered the loss of the lien through their voluntary action or nonaction. Section 29 of our Negotiable Instruments Act (being section 3720b-29 of the 1930 edition of our present Statutes) defines an "accommodation maker" as "one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person." The facts disclosed by this record indisputably show that the note sued on by defendants was made under such circumstances. Moreover, in every place in the documents supra where they are referred to they are described and recognized as "accommodation makers." We, therefore, conclude that this argument is unsustainable.

It is next urged, both in pleading and argument, that defendants waived their right to the preservation of the lien agreed to be made by plaintiffs in their favor, because the above excerpt from document No. 4 prescribed that before plaintiffs can be required to *enforce* any lien in behalf of defendants, by action in their name, the latter should request them to do so and that no such request was ever made. But we are convinced that counsel is confused as to the proper interpretation of the contents of the documents relating to the preservation of the lien in favor of defendants. It will be observed, from the insertions we have taken from the documents, that in No. 1 and No. 2 plaintiffs agreed "that the mechanic's lien of said Rommel Brothers shall be preserved *and enforced* for the benefit of said accommodation makers," etc. (Our italics.) We have already expressed our conclusion that document No. 4 was executed after the completion of the other three, but if mistaken therein, and if it be true that all were simultaneously executed, then they should be read together in ascertaining the intention of the parties thereto. When that is done the conclusion is inescapable that plaintiffs were unwilling to assume the additional obligation of *enforcing* in their name any lien that might be *preserved* by them, exclusively for the benefit of de-

fendants, and to thereby incur the expense incident thereto, as well as the hazard of neglecting to do so until the lien was lost, and they therefore incorporated in document No. 4, prepared by them, the qualifications that if they were called upon to make any such accommodation enforcement, by a proceeding in their name, it should first be requested by the ones to be benefited thereby; and that the latter should pay all expenses for such proceeding, including counsel fees and to notify plaintiffs of all steps desired to be taken in the action after it was instituted. Such qualifications, so incorporated in document No. 4, in no manner altered the one contained in the other documents obligating plaintiffs to take all necessary steps to *preserve* the lien in favor of defendants in case they were called upon to or did pay any amount as such accommodation makers. Such qualifications related only to the *enforcement* and not to the *preservation* of the lien. Therefore, this contention, so argued and relied on in avoidance of this defense, is ineffectual for that purpose, since no enforcement proceedings were ever instituted for the benefit of defendants, nor could any such now be done because plaintiffs have released their entire lien and there is none now, in existence, nor at the time of the filing of the answer, to be enforced for any one's benefit.

It is next argued, and which was also relied on in avoidance of this defense, that defendants (except Stewart) waived the filing of a lien for their benefit through certain conversations between plaintiffs, or their counsel, with two of them just preceding the last day for the filing of the lien. Those conversations were to the effect that plaintiffs requested defendants to join with them in filing the lien to be filed before the expiration of the time for doing so, but which they declined to do, and it is contended that because of their declination they waived their right, if any, to the filing or perfecting of a lien for their benefit. There is an issue of fact as to those two defendants with reference to the conversations so relied on, and as to the third one it is not pretended that any such approach was made to him, since he was absent on a visit to Europe and did not return until after the time had elapsed for completion of the lien. However, if we should assume for the purposes of the case that the conversations so relied on occurred, as testified to by plaintiff's witnesses, we would not then give to them the effect for which counsel contends. In

the first place it is not pretended that either of the defendants, or any one representing them, agreed therein to release plaintiffs from their obligation to file the lien contracted for, or objected to them doing so. Defendants could not, under the statute, file a lien in their names, since they had furnished no material that went into the building of the hotel, nor performed any labor thereon, and it is only for the benefit of such persons that the lien provided for in the statute is given. We, therefore, conclude that this defense is also without merit.

The next argument is that under the provisions of section 119 of our Negotiable Instruments Act (now section 3720b-119 of our present Statutes) a negotiable instrument, as is the note sued on, may not be discharged and the makers released except for the matters and in the manner therein contained and which do not embrace the defense now under consideration. But we have held in a number of cases since the enactment of the Negotiable Instruments Act that the equitable defense, by an accommodation maker or surety, now under consideration (i. e., that of failing to preserve or appropriate a security held by the payee and the relinquishment thereof to the detriment of the surety), is available to and will release the surety (pro tanto or entirely in accordance with the value of the lost security) notwithstanding the provisions of section 119 of our negotiable instruments statute, and that holding appears to be of general application by courts throughout the country where the Negotiable Instruments Act is in force. Some of the domestic cases so holding are Southern National Life Realty Corporation v. People's Bank of Bardstown, 178 Ky. 80, 198 S. W. 543; Elsey v. People's Bank of Bardwell, 166 Ky. 386, 179 S. W. 392; Pond Creek Coal Co. v. Citizens' Trust & Guaranty Co., 170 Ky. 601, 186 S. W. 494; and others cited in those opinions. The cited Elsey opinion was withdrawn or overruled in a second one of the same style, rendered on a petition for rehearing, and reported in 168 Ky. 701, 182 S. W. 873; but the latter one was expressly overruled in the Southern National Life Realty Corporation Case, 178 Ky. 80, 198 S. W. 543, and the principles stated in the first and withdrawn Elsey opinion (166 Ky. 386, 179 S. W. 392) were approved. Compare also the cases of Darland v. First National Bank of Springfield, 177 Ky. 261, 197 S. W. 826; Barker v. Illinois Surety

Co., 169 Ky. 441, 184 S. W. 377; Calloway v. Snapp, 78 Ky. 561; Broughton v. Saylor, 129 Ky. 180, 110 S. W. 866, 33 Ky. Law Rep. 611; Inland Navigating Co. v. American Surety Co., 190 Ky. 504, 227 S. W. 809, and cases cited therein.

In this case the record clearly shows, and the learned chancellor who tried the case so found, that plaintiffs agreed to *preserve* their mechanic's lien for the benefit of defendants as accommodation makers of the note sued on; that they failed to do so, and their failure was without legal excuse, and defendants were thereby released.

In avoidance of all of which it is finally argued that defendants waived their right to the lien because they executed the note sued on, in renewal of the balance of the total amount of their obligation to plaintiffs, after the time for filing of the lien had expired and which had the effect to relinquish the defense that we have been discussing. But this contention is without merit, since at that time the note, representing the balance due on their indebtedness, was held by a holder in due course and whose right to recover on it could not be defeated by such a defense. An additional reason why the argument is unavailable is that defendants did not know at that time of plaintiff's defalcations in the matter and they could not waive a fact of which they were ignorant.

Upon the whole case it is concluded that the judgment was and is correct, and it is affirmed.

The whole court sitting.