## Harlan Fuel Company v. Wiggington, et al.

(Decided June 3, 1924.)

### Appeal from Harlan Circuit Court.

1. Trial—Instruction Held Erroneous as Leaving Both Law and Facts to Jury.—An instruction, to find for defendant if plaintiff broke its part of contract without telling jury what breaches of contract would warrant a finding for defendant or what in law constituted a breach, was erroneous as leaving both law and facts to jury.

2.  Contracts—Interpretation is for Court.—Interpretation of contract is question for court.

3.  Contracts—Whether Contract Breached, Question for Jury.— Whether under evidence there has been breach of contract as interpreted by court is question for jury.

4.  Principal and Surety—That Contract had been Changed Affirmative Defense Not Admissible Under General Issue.—That contract had been changed after bond was given, or that contractor had been required to do work not required by specifications, was an affirmative defense in action against sureties and could not be introduced under general issue.

5.  Corporations—Only Bound by Acts of Authorized Agent, and Not by Deviations from Contract by Contractor Without Authority.— A corporation is only bound by acts of its authorized agent, and its rights are not affected as against sureties on contractor's bond by any deviation from contract made by contractor without its authority.

6.  Principal and Surety—Sureties Released by Material Additions to Work Not Provided in Specifications.—If obligee in bond changed contract and made material additions to work not provided for in specifications, sureties were released.

7.  Principal and Surety—Accommodation Sureties Bound Only by Letter of Bond.—Accommodation sureties without consideration are bound only by letter of their bond.

8.  Principal and Surety—Sureties Held Not Entitled to Notice of Abandonment of Contract.—Sureties on contractor's bond were not entitled to notice of abandonment thereof, where contract did not require notice.

9.  Principal and Surety—Failure to Reserve Percentage Held Not to Affect Liability of Sureties.—Retaining of 10 per cent. and taking of receipts from men and turning them over to obligee in bond held for protection of such obligee and not of sureties, and payment of such money to men did not affect liabilities of sureties.

10.  Contracts—Principal and Surety—Effect of Failure of Owner to Supply Materials.—Where owner was required to "use due diligen and its best efforts to furnish materials and machinery," failure to use ordinary care to furnish materials did not release sureties when contractor would not have completed contract if there had been no such failure, but resulted in liability to contractor for any loss or additional cost caused him thereby, and sureties would be substituted to contractor's rights.

11.  Contracts—Duty of Contractor to give Timely Notice of Materials Needed.—Where owner agreed to use due diligence and its best efforts to furnish materials and machinery, both parties were required to use ordinary care, and it was duty of contractor to give timely notice of what he needed.

12.  Principal and Surety—Agreement that Bond be Executed by Surety Company Immaterial in Action Against Other Sureties.— Where bond of sureties was taken by consent of parties in lieu

of surety company's bond, sureties cannot complain that contract required surety company's bond, not being parties to contract.

13. Evidence—Unsuccessful Efforts to Settle Out of Court Incompetent.—What takes place in an unsuccessful effort between parties to settle out of court is incompetent on trial.

14. Pleading—Exhibit Controls Pleading.—A written contract filed as exhibit with petition controlled pleading, and, if pleading alleged anything not contained in writing proper way to reach it was motion to strike, and not by answer putting allegations in issue.

15. Principal and Surety—Immaterial that Contractor Began Work Before Bond Executed.—It was not material that contractor began work under contract a few days before bond of sureties was executed, as they then guaranteed execution by him of contract.

HALL, JONES & LEE for appellant.

SNYDER & ADKINS and J. E. SAMPSON for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

In the spring of 1920 the Harlan Fuel Company proposed to erect a tipple, coal conveyor and headhouse on its property, and to this end had procured blue print specifications of the work, and on May 1st J. E. Condra entered into a written contract with it by which he agreed to do the work according to the specifications for $3,998.00, and to complete it within sixty days from the date the work was begun. The written contract provided that as a guarantee of his ability to perform the contract Condra should procure a bond in the sum of $2,500.00, to be executed by some good solvent bonding company; but afterwards, by consent of parties, this provision was waived upon the execution, by appellees, I. D. Wiggington and T. G. Wright, of the following bond:

"WHEREAS, Harlan Fuel Company has made and entered into a written contract with J. E. Condra to build and construct, ready for use and operation, one coal tipple, one coal conveyor, and headhouse and other things in connection therewith, named in said contract, at its mine on Slater fork in Harlan county, Kentucky, which contract was made and executed between the parties on the 1st day of May, 1920, and it is provided in said contract that J. E. Condra shall execute and deliver to Harlan Fuel Company a good and sufficient bond in the sum of

$2,500.00, which bond shall guarantee the full, complete and proper performance of said contract.

"Now, J. E. Condra, as principal, and we, I. D. Wiggington and T. G. Wright, as his sureties, do hereby undertake to and by these presents do guarantee that said J. E. Condra will completely, fully and properly execute said contract, and if the said J. E. Condra fails to properly execute said contract, we hereby agree to pay, and we are held and firmly bound unto the said Harlan Fuel Company, a corporation, in the sum of $2,500.00 to the payment of which to the said company we bind ourselves, our heirs, our executors and our administrators.

"However, if said J. E. Condra shall faithfully and fully perform all the obligations and duties imposed upon him by said contract and pay all debts for labor and other things in connection therewith, which he is bound to pay under said contract, then this obligation shall be void, otherwise it shall be and remain in full force and effect.

In witness whereof we have hereunto set our hands this 1st day of May, 1920,

> "J. E. CONDRA, Principal
> I. D. WIGGINGTON, Surety
> T. G. WRIGHT, Surety."

Condra failed to complete the work and this action was brought against the sureties by the Harlan Fuel Company to recover on the bond. By their answer the defendants controverted the allegations of the petition. They pleaded that the plaintiff had failed to retain ten per cent of Condra's pay roll as provided in the contract. and had failed to require Condra to file with the plaintiff written receipts from each employee showing that he had been paid by Condra for his labor. They also pleaded that by the contract the plaintiff was required to furnish all material and machinery necessary for the work and to place same on the ground near where the structures were to be erected and that this it failed to do, which had added $2,000.00 to Condra's expense. A reply was filed controverting the allegations of the answer. The case was heard before a jury and at the conclusion of the evidence the court by instruction one told the jury, in substance, that if they believed from the evidence that the plaintiff furnished to the contractor the material mentioned in the contract as near as practi-

cal to the place where the same was to be used, and further believed from the evidence that Condra failed to construct the things contracted for in accordance with the plans and specifications and abandoned the work before its completion, and that plaintiff was put to additional expense of completing the work over and above the contract price, then they should find for the plaintiff for such excess, not to exceed, however, the sum of $2,500.00; and unless they so believed they should find for the defendant. This was the only material instruction given except No. 2, which is in these words:

"The court further instructs the jury that if they shall believe from the evidence in this case that the plaintiffs broke or failed to perform their part of the contract before the breach the plaintiffs sued for herein, and that the defendants were prejudiced or injured thereby, then you ought to find for the defendants."

The jury found for the defendants and the plaintiff appeals.

On the trial of the case the evidence offered by the defendants took a wide range; they proved that the work was not done according to the specifications, but that additional work was required to be done not included in the specifications. There was also evidence showing that the plaintiff had not retained the ten per cent as required by the contract and that some delay was caused in the work by the failure of the plaintiff to supply the material. Instruction No. 2 left to the jury both the law and facts of the case. It left the jury to determine whether the plaintiff broke its part of the contract, without telling the jury what breaches of the contract did warrant a finding for the defendant The court instead of this general statement should have told the jury that if the plaintiff had done or failed to do certain things they should find for the defendants and should not have left to the jury to determine what in law was a breach of the contract. Citizens Trust Co. v. Ohio, etc., Tie Co., 138 Ky. 421.

The interpretation of the contract is a question for the court. Whether under the evidence there has been a breach of the contract as interpreted by the court is a question for the jury. Frankfort Modes Glass Works v. Arbogast, 148 Ky. 4.

The defendants did not plead in their answer that the contract had been changed after their bond was given or that the contractor had been required to do work not required by the specifications. This was an affirmative defense and could not be introduced under the general issue. It was error to allow the evidence of a change in the contract when this had not been pleaded. The object of pleading is to notify the opposite party of the facts relied on. It appears that the blue prints and specifications were burned in a house that had been destroyed by fire. This is the reason assigned for their not being produced on the trial, but no demand was made for them until the day of the trial and possibly other copies are in existence which can be obtained; for architects usually keep copies of these things. While the evidence of Condra is to the effect that work was done not required by the plans and specifications and an additional expense was thus incurred by him, the evidence is not clear that the company made any change in the plans or that any additional work was done by its orders. The corporation is only bound by the act of its authorized agent, and its rights are not affected by any deviation from the contract made by the contractor without its authority. But if after the bond was given it changed the contract and made material additions to the work not provided for in the specifications the sureties were released from liability on the bond.

"It is well settled and undisputed law that a surety is only bound by the very terms of his contract; and that if the creditor does any act which, in contemplation of law, alters the surety's liability, increases his risk, or deprives him, even for a moment, of the right to pay the debt and assume the position of the creditor, or of his right to seek indemnity, the surety is thereby discharged, and the fact that the surety may not have been actually injured is immaterial." Calloway v. Snapp, 78 Ky. 561; Pond Creek Coal Co. v. Citizens T. & G Co., 170 Ky. 601.

Appellees are simply accommodation sureties without any consideration. They are bound only by the letter of their bond. But to be available this defense must be pleaded and the evidence should be confined to what is pleaded. On the return of the case defendants will be allowed to amend their answer.

In Pond Creek Coal Company v. Citizens Trust Co., 170 Ky. 601, and in Inland Navigation Co. v. American Surety Co., 190 Ky. 504, it was held that the plaintiff had released the surety when it failed to retain the ten per cent of the pay rolls as provided by the contract. But in both those cases the contract provided that, if the principal did not carry out the contract the plaintiff should within ten days notify the surety in writing, and the surety at its option should have the right to assume the contract and sublet or complete the same and to use in so doing all the plant, equipment and machinery of the principal and thereafter all the money due, including the ten per cent on previous pay rolls, should be paid to the surety and he should be subrogated to all the rights of the principal. Those decisions are based upon this provision of the contract. In the contract before us there is no provision that any notice should be given the sureties. There is no provision that the sureties may complete the contract or in any event become entitled to the reserved ten per cent. The provisions of the contract are as follows:

"It is further agreed that party of the second part shall make up and furnish to the party of the first part a complete pay roll showing all moneys due for labor performed on said work, two weeks from the beginning of said work and every two weeks thereafter, and the party of the first part is to pay to party of the second part the amount of said pay roll presented each two weeks, less 10%, which 10% shall constitute a retainer to be held each two weeks by the party of the first part until the completion of said job. Said pay roll is not to include any compensation or salary for party of the second part and shall include only the laborers on said job. At the completion of said job, as aforesaid, the party of the first part agrees to pay to party of the second part the consideration herein above named, namely, $3,-998.00, less the amounts or sums of money it has previously paid to the party of the second part for pay roll or other purposes.

"To protect the party of the first part against any possibility of any person or persons claiming any money or loss against it for labor performed on said job, the said party of the second part agrees to procure written receipts from all of said laborers

for the amount of money paid them every two weeks as the money is paid and to deliver said receipts to the party of the first part for its protection as aforesaid.''

This case is similar to Mays v. Lane, 116 Ky. 566, where it was held under a like contract that the payment of the reserved per cent did not release the surety. The plaintiff did reserve the ten per cent, as provided in the contract, until the last payment made to Condra in August. He then did not have enough money to pay the men; the men were demanding their pay. Condra agreed with the plaintiff to send it a check in a few days to replace the money if it would then furnish the money to pay the men and keep things going. This it did. Nothing more was paid the men than was due them then. Condra did not send the check as he promised, and when the next pay day came Condra couldn't pay and the men quit. The work was then abandoned by him. There was then something over $2,000.00 due the men. They were asserting a lien on the plant for their work, and to save cost and litigation the plaintiff paid the men and went on and finished the work. This they did at a cost exceeding $2,500.00. They had then paid Condra nearly $3,900.00. They did not give the sureties notice that Condra had abandoned the work until October 12th, but this was immaterial as the contract did not require a notice to the sureties.

By the terms of this contract the retaining of the ten per cent and the taking of receipts from the men and turning them over to the company was for the protection of the company. It was not for the protection of the sureties, because the contract does not so provide. The payment of this money did not affect the liabilities of the sureties.

There is no evidence that there was any complaint at the time that the plaintiff failed to furnish any machinery or material as provided by the contract. The contract contains these provisions:

''The party of the first part is to furnish all the material and machinery to be used in said coal tipple and coal conveyor and deliver said material on the ground near said place where the said tipple is to be erected.

''It is further understood and agreed between the parties hereto that if at any time during the pro-

secution of the aforesaid work, party of the first part is unable to procure the necessary material or any part thereof, and party of the second part is delayed in said work by reason thereof, the time within which party of the second part is given to finish said job shall be extended proportionately. It is further agreed that the party of the first part shall use due diligence and its best efforts to furnish the materials and machinery necessary for the completion of said job, but if for any reason it cannot procure said materials, or any part thereof, at the time it is needed said delay occasioned thereby shall not subject party of the first part to any liability or additional charge or consideration under the terms of this contract."

If the plaintiff was unable to procure the necessary material and for this reason failed to furnish them, the time so lost by Condra was to be added to his time for completing the contract. This is no evidence that the plaintiff was unable to procure the materials. By the contract it was required to "use due diligence and its best efforts to furnish the materials and machinery." The materials were to be furnished from day to day as required by the contractor. The company was not an insurer that everything needed would always be there, but it was required to use due diligence and its best efforts to this end. If it failed to do this, that is, if it failed to use ordinary care in this respect, and, but for this, the contractor would have completed the contract as provided thereby, the sureties were released. But if the contractor would not have completed the contract, as required thereby, if there had been no such failure on the part of the plaintiff the sureties were not released by such failure on its part. In that event the plaintiff would be liable to the contractor for any loss or additional expense caused him thereby and the sureties would be substituted to the contractor's rights, and the amount of this expense should be deducted from the balance due by the contractor on the settlement of the account.

The fact is the materials were furnished from time to time, and necessarily in such work mistakes will be made and timber needed today may not be on the ground today. But both parties were required to use ordinary care and it was the duty of the contractor to give timely notice of what he needed. On another trial the court will modify instruction No. 1 as above indicated.

The court properly overruled the defendants' demurrer to the plaintiff's petition, for the reasons above indicated, and properly sustained the plaintiff's demurrer to the paragraph of the answer pleading that no bond was executed by a surety company as provided in the contract. The sureties are not parties to the contract. The bond of the sureties was taken by consent of the parties in lieu of a surety company's bond. All reference to this subject should have been excluded on the trial.

The rule is well settled that what takes place in an unsuccessful effort between parties to settle, out of court, their differences, is incompetent on the trial. It is not material whose fault brought about the failure to reach a settlement. All the testimony as to what took place between the sureties and the company in October should have been excluded from the jury. 1 Greenleaf on Evidence, section 192; Simpson v. Simpson, 145 Ky. 45.

The court should have sustained the motion to strike from the defendants' answer so much as put in issue the provisions of the written contract. The contract was filed as an exhibit with the petition. The exhibit controlled the pleading and if the pleading alleged anything not contained in the writing the proper way to reach this is a motion to strike.

It was not material that Condra began the work under the contract a few days before the bond of the sureties was executed. They then guaranteed the execution by him of the contract. All the testimony on this subject should have been excluded.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.