## Henderson v. Phoenix Insurance Company.

(Decided February 25, 1930.)

218

PEAK & PEAK and FRANK P. HENDERSON for appellants.

FRANK M. DRAKE for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

In 1920, James C. Perry, agent of the Phoenix Insurance Company, executed to it a fidelity and guaranty bond in the sum of $1,500 with the appellee, Dr. F. L. Henderson, and one Chas. H. Allen as sureties. It was conditioned that he should keep true and accurate accounts of property and receipts and disbursements and account for and pay over the same to the company regularly every month or when demanded, and would comply with all instructions furnished him by it.

About the first of November, 1924, the agent's indebtedness amounted to $13,424.77, and on the 24th of

that month, counsel for the company advised Dr. Henderson that Mr. Perry was heavily indebted to it and, although every opportunity had been given him to arrange the matter without calling on his sureties, it was evident that he could do nothing to avoid that necessity, and that it was obvious the company would have to look to the sureties for the full amount of the bond. It was suggested that Dr. Henderson discuss the situation with the writer at his convenience. Dr. Henderson acknowledged receipt of that letter and advised that his attorney would take up the matter. On December 4th he was advised by letter that the company and Perry had tentatively agreed on a plan by which it was hoped the indebtedness could be paid by him, and Dr. Henderson's approval of the arrangement and his agreement to pay the bond at any time it might become necessary to call on him were asked. He was further advised that the enforcement of his obligation would be deferred as long as Perry continued to comply with his agreement. Dr. Henderson acknowledged receipt with thanks and further wrote, "Am glad that an arrangement or an agreement has been reached and trust same will work out satisfactory." There were no further communications except to advise the surety in a general way that Perry was not complying with his agreement by keeping up his payments.

On October 15th he was called on to pay the bond. It was not paid and suit was instituted by the company against Perry, Dr. Henderson, and Allen; it being charged that Perry was then indebted to the company in the sum of $8,426.21, Perry having reduced his obligation to that sum. Allen, the cosurety, was not located and consequently was not brought before the court.

Dr. Henderson interposed several defenses, but seems to have abandoned all of them except that the company had not acted in good faith with him, in that the agent had not been required to pay over funds monthly or when demanded; and that he had been in default continuously since 1922 without any notice of that fact being given the surety; that had such condition been brought to his attention he could have protected himself, because Perry then had sufficient property to settle the account, and he as surety would have required him to do so, or have secured himself from loss; and that the concealment of this default and the facts increased his risk and was a fraud upon him. These things were pleaded in bar

and estoppel. It was further alleged that an agreement had been entered into between the company and its agent by which he had been granted an extension of time for the payment of his obligation without any notice to him as surety; that such agreement was not one extending leniency to him, but a contract by which the plaintiff was endeavoring to receive and did receive a large sum of money and thereby protected itself and not the surety; that by reason of such conduct on its part, the company committed an act which altered the position of the surety, increased his risk, and deprived him for a considerable length of time of the right to protect himself.

The pleas were traversed, and it was affirmatively alleged that after notice given the defendant and with his knowledge, consent, and approval, and in an effort to protect him and avoid the necessity of requiring payment by him, and without prejudice or derogation to any of his rights, or releasing him from his liability as surety, the company had agreed with Perry upon the payment of the indebtedness referred to; that the contract was made under an express agreement with Dr. Henderson that it should not relieve him of his obligation upon the bond, but that he should remain fully liable in the event the indebtedness should not be paid in accordance with the agreement. In response to the plea in bar and estoppel by reason of laches, this provision of the bond was relied on: "It being understood, and this obligation is signed by the sureties, and received by the said company upon the express condition, that any leniency shown by the company to said agent shall not relieve the sureties from their obligations."

The claims asserted in the pleadings are the constructions placed on the evidence, which consisted of the introduction of the bond, the agent's account, commencing with July, 1923 (before which it was apparently in balance), and the correspondence above outlined, and of a conversation or two, the substance of which seems to have been later embodied in the letters. Dr. Henderson testified he had made no agreement respecting the matter, but had merely expressed the hope that an arrangement could be made whereby he would not have to pay anything on the bond. The agreement between the company and the agent respecting settlement was not put in evidence, although counsel for the appellant strenuously endeavored to have it introduced.

The jury was directed to return a verdict for the company. The grounds upon which a reversal of the judgment entered on that verdict is asked are: (1) The company had not acted in good faith toward the appellant as surety on the bond and its conduct discharged him from liability; (2) failure of the court to require appellee to file the contracts of settlement referred to; and (3) that appellant is entitled to credit by whatever sum was paid under that agreement, which would fully satisfy his obligation.

1. The fact that the company continued to extend credit to its agent, although the amount greatly increased during the last two years, did not relieve him and his surety from liability. Nor did the failure to require monthly settlements have that effect. It was one of the obligations of the bond that the agent would do that very thing, and it can hardly be said that his failure to perform that duty, and his breach of that condition in the bond, relieved his surety. That was one of the undertakings of the surety—to see that he did do so. There was nothing in the bond which required the company to notify the surety that the agent was not making monthly settlements. On the contrary, it was a condition of the bond that leniency should not relieve the surety from his obligation. It appears that remittances had been made from time to time, and it was not until they ceased being made that it could be said that the agent would or could not pay what was due; in a word, was in default. Mere indulgence or forbearance and failure to notify the surety of a possibility or even a probability of default on the part of the principal do not release him. The surety's obligation was to pay at all events and under all circumstances as if he himself were the sole debtor. 21 R. C. L. 1034. It is only where the creditor or beneficiary of the bond does something which alters, in law, the surety's position or liability, increases his risk, or deprives him of the right to seek indemnity or to pay the debt and assume the former's position, that he is relieved. Calloway v. Snapp, 78 Ky. 561; Harlan Fuel Co. v. Wiggington, 203 Ky. 546, 262 S. W. 957. If there has been an agreement, having the essentials of a binding contract, between the creditor and the principal extending the obligation to pay for a definite time, to which the surety has not agreed, he will be released. Marshall v. Hollingsworth, 166 Ky. 190, 179 S. W. 34.

In 12 R. C. L. 1085, in treating of laches in case of a guaranty, the law is thus stated: ''As shown in the preceding paragraph, an extension of the time of payment is generally ineffective to discharge the guarantor unless the creditor binds himself so that he cannot enforce the obligation for a certain time which has the effect of discharging the guarantor. So, where the creditor does not bind himself to any delay, mere laches in the enforcement of the obligation or indulgence given to the debtor, does not release the guarantor. That the indulgence given to the principal debtor may work to the disadvantage of the guarantor does not generally affect the question.''

Of course, where the creditor does any act which may injuriously affect the rights of the surety, he discharges him. But unless he has specifically agreed in the bond to do so, the creditor owes no duty of voluntarily giving information of the principal's first delinquency or apparent default. It is the surety's business to see that the principal performs the duty which he has guaranteed. ''The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent, for whom the surety is liable. Mere inaction of the creditor will not discharge the surety unless it amounts to fraud or concealment. In accordance with this doctrine it has been held that the fact that an agent, for the performance of whose duties a bond with sureties was given, has, to the knowledge of his principal, been delinquent for more than three years in making payments of money's collected by him, during which time he has been continued in his employment without notice to the surety of such delinquency, does not release the latter.'' 21 R. C. L. 1072.

The court is of the opinion that there was no conduct on the part of the company which altered the situation or in any way increased the surety's risk before he was notified of the situation in November, 1924.

2. Counsel for defendant, both in the pleadings and by motion, called upon the company to produce the agreement made with Perry respecting his delinquency and which was referred to in the correspondence with Dr. Henderson. Counsel for the plaintiff appears to have had a paper in his possession in the courtroom which no doubt was the original agreement, but declined to permit

its introduction in evidence because it had come to him from his client through his professional relation and on the ground that it was immaterial. The court refused to compel its introduction. While the persistent refusal to permit this agreement to be made a part of the record creates a suspicion of fear as to its effect, it is not shown in the avowal that it altered the situation of the surety. Whatever was done at the time appears to have been done in an effort to save Dr. Henderson and with his acquiescence. This contract was therefore not material.

3. The statement of the agent's account discloses that there was credited on it the sum of $5,046.97 after November 1, 1924. The balance, as stated, was greatly in excess of the amount of the bond. Appellant insists that these payments should have been applied to that portion of the indebtedness for which he was bound; that since the principal and surety both were bound for $1,500, and the principal alone for the balance, the payments should have been applied to the first sum. The long-standing rule with respect to the application of payments is well known to be that, where the debtor owes two debts to one creditor, he may designate the debt to which he desires the payment to be applied, but if there is no such designation, then it is the right of the creditor, where no equities intervene involving third parties, to apply the payment to such debt as he may select. Ratliff v. Anderson & Ratliff, 195 Ky. 320, 242 S. W. 35. A creditor holding a secured and an unsecured claim may apply an undirected payment to an unsecured claim. Wilkes v. Kitchen, 187 Ky. 211, 218 S. W. 718. In applying this rule to this class of cases, it is said in 21 R. C. L. 1128: "As a general proposition it seems that where a principal makes payments from funds which are his own and which are free from any equity in favor of the surety to have the money applied to the debt for which the surety is liable, the surety has no power to direct that the payment shall be applied to any particular debt."

It is only when the funds of the principal are subject to some equity in favor of the surety that the latter may direct the application of payments made by him. Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291. It does not appear that Dr. Henderson had any equity in the funds with which the payments were made from time to time on Perry's indebtedness, and conse-

quently he does not have the right to have his surety obligation satisfied by them, even if it be considered that there were in fact two different obligations.

The judgment is accordingly affirmed.