# Young Men's Christian Association's Assignee of Paducah v. Indemnity Insurance Company of North America.

(Decided June 14, 1932.)

L. B. ALEXANDER for appellant.

W. A. BERRY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

In November, 1927, W. R. Chandler was engaged in the business of plumbing in Paducah, Ky., in the name of the Economy Plumbing Company. The Young Men's Christian Association entered into a contract with him for plumbing and heating a unit of its building, situated in the city of Paducah, and for which it agreed to pay him $10,417.30. The contract between them was reduced to writing, signed, delivered, and accepted. The plan and specifications of the plumbing and heating to be done by him were made a part of the written contract. Articles 4 and 5 of the contract contained these provisions:

"Article Four. Progress Payments—The Owner shall make payments on account of the contract as provided therein as follows:

474

"On or about the first to fifth day of each month Eighty (80) per cent of the value, based on the contract prices of labor and materials incorporated in the work up to the 1st to 5th day of that month as estimated by the Architect, less the aggregate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to Eighty (80) per cent of the contract price."

"Article 5. Acceptance and Final Payment— Final payment shall be due thirty days (30) after substantial completion of the work provided the work be then fully completed and the Contract fully performed. Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the contract, and the contract fully performed he shall promptly issue a final certificate over his own signature, stating that the work provided for in this contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the contractor and noted in said final certificate, is due and payable. Before issuance of final certificate the contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

To secure the Young Men's Christian Association in the faithful performance of his contract, Chandler executed and delivered to it a bond, signed by the Indemnity Company of North America, as surety. The contract between Chandler and the Young Men's Christian Association was referred to and made a part of it with the proviso that the contract was to be considered a part of the bond as if copied therein. It was stipulated in the bond:

"That if the above bounded principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above obligee, all loss and damage which said obligee may sustain by

reason of failure or default on the part of said principal, then this obligation shall be void; otherwise to be and remain in full force and effect.''

Chandler in the execution of his contract furnished material and labor, and, as the work progressed, the architect's certificates were issued for 80 per cent thereof and delivered as per his contract for different amounts, aggregating $7,200. He performed extra work amounting to $992.60. On October 4, 1928, the Young Men's Christian Association advanced to Chandler $633.37, without the architect's certificate and in excess of 80 per cent of the contract price to enable him to pay for material purhased and work performed. Chandler was hard pressed to pay for material and labor, and, in order to obtain money for that purpose, he borrowed from the People's National Bank of Paducah $700, and, to secure its payment, he executed and delivered to the bank an order on the Young Men's Christian Association for that amount, which it approved and paid on April 2, 1929. Immediately on its payment, Chandler availed himself of the Bankruptcy Law (11 USCA). At that time he owed for material used in the building, to Bass & Co., $1,531.19, and, to the Egyptian Supply Company, $422.93. He had failed to install, as per his contract, a chlorinator of the value of $597. The Young Men's Christian Association paid to Bass & Co. and to the Egyptian Supply Company the amounts respectively due them. The chlorinator was not installed, but for the purpose of this action it was agreed that the cost to install it was $597. A stipulation of facts was made by the parties showing the amount of the debts to Bass & Co. and the Egyptian Supply Company, with a lien on the property of the Young Men's Christian Association to secure their payment. The bankruptcy proceedings of Chandler and the result thereof are set out in the stipulation of facts. This action was instituted to recover on the bond of the Indemnity Company of North America, $1,193 which the Young Men's Christian Association averred it was entitled to recover by reason of Chandler's breach of the contract to complete the building, and to relieve its property of the materialmen's liens.

On the trial by the court without a jury, a recovery of $467.66, with interest from the 1st day of September, 1929, until paid, and the costs, were decreed against the Indemnity Insurance Company. The Young Men's Chris-

tian Association by its assignee prosecutes this appeal, and the indemnity company has been granted a cross-appeal.

The appellant and the appellee substantially agree on the facts, but disagree as to their application of the law. The appellant argues that the payment of the $633.27 to the contractor and the $700 to the bank to satisfy the order given to it by the contractor, under the circumstances, were not a violation of the terms of the contract. The appellee insists the contrary. It is insisted by the appellee that the language of articles 4 and 5 of the contract brings this case squarely within the principles enunciated by this court in Pond Creek Coal Company v. Citizens' Trust & Guaranty Co., 170 Ky. 601, 186 S. W. 494. The appellant contends that the provisions of its contract, considered in the light of the undisputed facts, bring it within the rule stated in Mayes v. Lane, 116 Ky. 566, 76 S. W. 399, 25 Ky. Law Rep. 824, and Harlan Fuel Co. v. Wiggington, 203 Ky. 546, 262 S. W. 957, although the sureties therein were gratuitous or voluntary.

In the Pond Creek Coal Company case, the owner of the building agreed to retain 10 per cent of the contract price, until the building was completed "as security for the faithful performance of the contract by the contractor." The language of the contract therein distinguishes it from the Mayes and the Harlan Fuel Company cases as well as the present one.

In the present case, the owner did not by his contract with the contractor agree to retain any portion of the contract price until the building was completed as security for the faithful performance of the contract by the contrator.

But the indemnity company, by its bond, obligated itself to protect the owner from loss growing out of the claims of the materialmen and laborers. For this reason, as was stated by this court in U. S. Fidelity & Guaranty Co. v. Trustees, Baptist Church, 102 S. W. 325, 327, 31 Ky. Law Rep. 520, the owner "had the right in good faith to discharge these debts that might have been asserted as liens and was amply protected by the conditions in the bond." The failure of the contractor here to carry out and complete his contract was the same trouble which the contractor experienced in U. S. Fidelity & Guaranty Co. v. Trustees, Baptist Church. "He took the

contract too low, and for a less sum than he bound himself for which the building could be completed.'' The $633.27 paid the contractors in excess of the 80 per cent, without the architect's certificate, was applied to the payment of debts for material and labor, which if not paid, the terms of the appellee's bond bound it to pay. The same was true as to the payment of the $700. The persons holding such claims had a cause of action against the appellee, whether they asserted their lien or not under section 2463, Kentucky Statutes. The Standard Oil Co. v. National Surety Co., 234 Ky. 764, 29 S. W. (2d) 29. The payment of these amounts to the contractor and their application by him to the discharge of such claims were not prejudicial to the appellee. Henderson v. Phoenix Ins. Co., 233 Ky. 217, 25 S. W. (2d) 359. Their payment under the undisputed facts was not a colorful violation of appellant's contract. It was not harmful, but beneficial and best for the interest of the Indemnity Company, as it resulted in a discharge to that extent of its liability, and saved the accumulation of interest on the claims thereby liquidated. Henderson v. Phoenix Ins. Co., supra; Maryland Casualty Co. v. Ballard County, 217 Ky. 343, 289 S. W. 316; Hammond v. Hurst, 211 Ky. 167, 277 S. W. 308; St. Mary's College v. Meagher, 11 S. W. 608, 11 Ky. Law Rep. 112; Russell v. Ross, 157 Cal. 174, 106 P. 583; Fidelity & Casualty Co. v. Metal Window Products Co. (C. C. A.), 30 F. (2d) 56.

There is a well-recognized distinction between the rule governing the liability of a gratuitous or voluntary surety and that controlling those of a paid surety. The reason for this distinction is, a gratuitous or voluntary surety does not participate in the benefits of the principal's contract. To protect such surety it is a fixed rule that the party secured or guaranteed must exercise the utmost good faith in all of his dealings with the principal obligor and strictly comply with the terms of the contract, and any failure on his part to do this will result in a release of the surety. Pond Creek Coal Co. v. Citizens' Trust & Guaranty Co., supra. The prevailing rule in the case of a company organized for the express purpose of acting as surety for a compensation is its bond is in its essentials a contract of insurance. This court in National Surety Co. v. Price, 162 Ky. 632, 172 S. W. 1072, recognized this distinctive character of a company's bond. A like construction of such bond was sustained in Lewis v. U. S. Fidelity & Guaranty Co., 144 Ky. 428, 138 S. W. 305,

Ann. Cas. 1913A, 564; Champion Ice Mfg. Co. v. American Bonding Co., 115 Ky. 863, 75 S. W. 197, 25 Ky. Law Rep. 239, 103 Am. St. Rep. 356; Ætna Life Ins. Co. v. Bowling Green Gas Light Co., 150 Ky. 732, 150 S. W. 994, 43 L. R. A. (N. S.) 1128; U. S. Fidelity & Guaranty Co. v. Allen County, 122 Ky. 825, 93 S. W. 44, 29 Ky. Law Rep. 356; George A. Hormel & Co. v. American Bonding Co., 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513.

The reason for the distinction was most aptly stated in Atlantic Trust & D. Co. v. Laurinburg, 163 F. 690, 695, 90 C. C. A. 274, in this language:

"The very reason for the existence of this kind of corporations, and the strongest argument put forward by them for patronage, is that the embarrassment and hardship growing out of individual suretyship that give application for this rule is by them taken away; that it is their business to take risks and expect losses. If, with their superior means and facilities, they are to be permitted to take the risks, but avoid the losses, by the rule of strictissimi juris, we may expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves. It is right, therefore, to say to them that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute. In this case no injury, but benefit, came to this defendant from all the changes made, and from the town's guaranteeing the material order and advancing the money for the contracting company to advance and perform the work, and its exceptions because of these are groundless."

Applying the principles observed in such cases to the undisputed facts, we are not convinced that the appellee was either damaged, injured, or prejudiced by the payment of the $633.27 or the $700, to and for the benefit of the contractor, and the actual appropriation thereof to the payment of material and labor required under the expressed term of the contract, although such may be regarded a mere technical breach of the contract.

Wherefore the judgment is affirmed on the cross-appeal and reversed on the original appeal for proceedings consistent with this opinion.