## National Union Indemnity Co. v. Standard Oil Co.

(Decided Jan. 31, 1936.)

WOODWARD, HAMILTON & HOBSON for appellant.

CLIFFORD E. SMITH and CLYDE REED for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The question here presented is as to the liability of the appellant bonding company to the appellee Standard Oil Company for its construction supplies furnished the contractors, insured by appellant under the terms of its bond, by which it guaranteed both their performance of the contract and payment of all lienable bills for labor or materials furnished them in connection therewith.

Appellant claims that it was released from liability for the indebtedness upon the alleged ground that there was a concerted concealment by the appellee oil company and the insured contractors of a material fact (i. e., the latter's unpaid indebtedness owing plaintiff) from it as the surety, which so affected and, prejudiced its risk as to release it from liability.

The facts out of which this litigation arose, as disclosed by the record and brief of appellant, are that the appellee Standard Oil Company filed its petition in the Franklin circuit court against G. C. and C. S. Woodward, partners, who traded as the Wilmore Construction Company (hereinafter referred to as the contractors), and their surety, the National Union Indemnity Company (hereinafter referred to as the surety), alleging that in August, 1931, a contract for the construction of a certain state highway project was entered into between the state highway commission and the contractors, with the appellant indemnity company as surety; that by the terms of this contract and bond, incorporating the contract, the contractors agreed to pay, and the surety guaranteed the payment of, all bills for labor, materials, and supplies furnished and used in connection with said road project; and that the plaintiff oil company had sold and delivered the contractors construction supplies, for which (it is admitted) there was a balance due and owing it of $2,997.74, the amount sued for.

For this debt judgment was recovered against the

contractors upon their failure to answer, and the demurrer of the surety company being overruled, it filed answer, pleading as an affirmative defense, by its second paragraph, that there was a uniform rule and practice of the highway commission that it would not pay contractors for work done, when advised of indebtedness owing by them for labor, materials, etc., until the contractors had settled such indebtedness; that on August 13, 1932, the contractors were indebted to the plaintiff in a sum in excess of the amount sued for, for labor, materials, and supplies furnished on the contract; that on said date the highway commission had on hand a sum largely in excess of the amount then due plaintiff, which was owing the contractors, which was sufficient to pay all of the obligations of the contractors; but that at such time the contractors induced the plaintiff to agree that it would not advise the surety of the amount owing by them to plaintiff and would not file any claim therefor with the highway commission, so as to permit the contractors to collect from the commission the money which should have been applied to the' payment of their debts. It averred that such arrangement between the plaintiff and contractors was carried out, to the detriment and injury of the surety, liable under its bond, guaranteeing payment, for the materials. Further it pleaded a second like instance occurring in November, 1932, when the contractors again induced the plaintiff to forego filing any claim with the commission or advising the surety company of such indebtedness, whereby the contractors were again enabled to collect all the funds then owing them by the highway commission for road construction work and affirmatively pleaded that by reason and on account of such facts—constituting a concerted concealment of its unpaid indebtedness owing plaintiff for supplies furnished them on the road project, which materially affected the surety's risk—the defendant surety was thereby released from the obligations of the bond.

By agreement, the affirmative allegations of the answer were controverted and the correctness of the account sued on stipulated. Also, by express agreement of the parties, a jury was waived and the law and facts submitted to the court for trial and judgment. The surety then moved the court to find certain facts and adopt certain legal conclusions as tendered by it, which motion the court overruled and rejected the tendered

findings, and in lieu thereof then filed its findings of fact and conclusions of law as follows:

## "The Facts.

"The execution of the contract and bond, herein sued on, is admitted. By the contract the Wilmore Construction Company, partnership, undertook the construction of a highway for the state highway commission. By the terms of the contract and bond, the said contractor, as the principal and the National Union Indemnity Company, as surety, agreed to pay for all labor, materials, and supplies agreed to pay for all labor materials, and supplies furnished and used in the performance of the contract. It is also admitted by a stipulation entered of record that the plaintiff, Standard Oil Company, furnished to the said contractor certain supplies and materials, which entered into the construction of said road for which the contractor and surety were obligated by the terms of said contract and bond. The amount of the balance due on plaintiff's account is not disputed. Hence, the *only facts in dispute are those set out in the second paragraph of the answer filed by the surety upon which the surety bases its claim of release from the obligation of suretyship.* (Italics ours.)

"Upon these issues the court finds the facts to be as follows:

"(1) At the time of the execution of the contract and bond and at all times referred to in the record, it was the general practice of the state highway commission to permit creditors, who had furnished materials and supplies to contractors on state road projects, to file their unpaid claims with the commission and to withhold final payment to the contractor until such claims were properly adjusted.

"(2) In August, 1932, one of the members of the firm, Wilmore Construction Company, requested Mr. Allen, the collection manager for the plaintiff, not to file the plaintiff's claim with the highway commission. The plaintiff did not file the claim and the contractor was not hindered in collecting the funds then due which were in excess of the plaintiff's claim.

"(3) In November of the same year the plaintiff's said manager again, at a time when the highway commission held more than sufficient funds due the contractor to pay the plaintiff's claim, acquiesced in a second request of the contractor and did not file the claim with the commission and the contractor collected his final estimate due under the contract.

"(4) At one time the contractor requested the plaintiff not to notify the surety of the account.

"(5) The plaintiff did not enter into any agreement, conspiracy or other arrangement with the contractor to conceal or aid the contractor in concealing from the surety the fact of the contractor's indebtedness to the plaintiff, and did not conceal same.

"(6) The plaintiff endeavored to notify the surety on July 28, 1932, by notice to Mr. Harlow, the former agent who signed the said bond for the surety, but Mr. Harlow, without the knowledge of the plaintiff, had severed his connection with the surety company, and the defendant surety was never notified of the plaintiff's claim until after the contractor had become insolvent in 1933.

"(7) The defendant surety *made no inquiry and exercised no diligence whatever to ascertain whether the contractor owed unpaid claims for which it was responsible under the bond and made no effort to have the highway commission exercise the power given it by the terms of the contract and bond to withhold final payment until the contractor show that all claims for materials and supplies were satisfied.* It appears that ordinary diligence on the part of the surety would have enabled the surety to have ascertained the facts and to have protected itself against loss. (Italics ours.)

"The Law.

"(1) The plaintiff was under no legal duty or obligation to file its claim with the highway commission nor to make any disclosure or give any notice to the surety, unless requested to do so, and therefore in failing to do so no legal duty or obligation to the surety was violated.

"(2) In merely acquiescing in the contractor's request not to file the claim with the commission, the plaintiff was guilty of no fraudulent conduct toward the surety. Its conduct amounted to nothing more than gratuitous indulgence through passivity and inaction, which did not operate to release the surety, nor alter the absolute and unconditional liability of the surety under the terms of the contract and bond.

"(3) The plaintiff is entitled to recover from the defendant, National Union Indemnity Company, the amount of the debt and interest herein sued for."

These findings of fact by the learned judge upon submission to the court therefor, the parties having waived a jury, are under such circumstances to be considered and treated as having the same force and effect as if so found by the verdict of a properly instructed jury. Sections 331 and 332, Civ. Code Prac., and Chesapeake & O. R. Co. v. Williams, 156 Ky. 114, 160 S. W. 769, 49 L. R. A. (N. S.) 347.

The facts as thus found by the lower court are clearly and directly against the contention of appellant that there was a concerted concealment of the material fact of the contractor's unpaid indebtedness owing plaintiff from the surety, in that the court's express finding on this point is that "the plaintiff did not enter into any agreement, conspiracy or other arrangement with the contractor to conceal or to aid the contractor in concealing from the surety the fact of the contractor's indebtedness to the plaintiff, and did not conceal same," and, further that "the plaintiff (here the appellee) endeavored to notify the surety on July 28, 1932," by a notice given its then supposed agent, Harlow, he having been its agent who had signed the said contractor's bond for the surety and without knowledge that his agency with the surety company had been severed, of the contractors' then delinquency in the payment of the large indebtedness owing it for materials it had furnished the insured contractors in connection with their performance of this highway project.

The general rule of law applicable as to the surety's liability upon the facts thus put in issue, such

finding thereon made adversely to appellant's contention, is thus stated in 21 R. C. L. sec. 80, 1032, as follows:

> "It is a general principle that creditor is under no obligation to be actively diligent in pursuit of his principal debtor. He may forbear the prosecution of his claim, and remain inactive, without impairing his right to resort to the surety, particularly when his forbearance amounts to no more than a mere inaction or passivity. Therefore the mere neglect of a creditor to sue or to attempt to collect a debt at the time it falls due does not discharge the sureties, although the principal had ample means at the time, and subsequently became insolvent * * Thus a gratuitous indulgence of the principal, whether extended at his request or without it, and whether it is yielded by the creditor from sympathy and from an inclination to favor him, or is the result of mere passiveness, will not operate to discharge the surety."

See, also, the case of Henderson v. Phœnix Insurance Co., 233 Ky. 217, 25 S. W. (2d) 359, 361, wherein to like effect this general rule is again thus announced that:

> "Mere indulgence or forbearance and failure to notify the surety of a possibility or even a probability of default on the part of the principal do not release him. The surety's obligation was to pay at all events and under all circumstances as if he himself were the sole debtor. 21 R. C. L. 1034. It is only where the creditor or beneficiary of the bond does something which alters, in law, the surety's position or liability, increases his risk, or deprives him of the right to seek indemnity or to pay the debt and assume the former's position, that he is relieved. Calloway v. Snapp, 78 Ky. 561; Harlan Fuel Co. v. Wigginton, 203 Ky. 546, 262 S. W. 957. If there has been an agreement, having the essentials of a binding contract, between the creditor and the principal extending the obligation to pay for a definite time, to which the surety has not agreed, he will be released. Marshall v. Hollingsworth, 166 Ky. 190, 179 S. W. 34."

As to the charged agreement between the principal debtor (the insured contractors) and the plaintiff cre-

ditor, which appellant contends was a fraudulent agreement between them, materially prejudicing its risk, it is shown by the testimony of Mr. Allen, plaintiff's manager of its branch office extending this credit, that no binding agreement was made by it and the debtor extending the latter's obligation to pay for a definite time nor that its admitted forbearance shown debtor, upon his request that it should not file its claim with the highway commission, was anything more than a gratuitous indulgence shown the debtor which was in no wise effective to alter surety's position of liability or to increase its risk or to deprive it of the right to seek indemnity.

Mr. Allen's testimony as to this is as follows:

"I think it was on the 13th of August, 1932, that Mr. C. S. Woodward, one of the parties interested in the Wilmore Construction Company, came into our office in Louisville and asked for us not to file claim at Frankfort. He told us that there was sufficient money due them, due his Company, in the form of estimates, retainage and overruns with which to pay all obligations in full, and we agreed not to file the claim with the Highway Commission."

Appellant's contention is that as there was then in the hands of the highway commission a balance owing the contractors upon this highway project, had it been then notified by the creditor of its unpaid indebtedness owing by the contractors, appellant's liability under the bond would have been avoided, by reason of the commission's practice requiring the contractors, upon notice given them, to pay all labor, material, etc., claims, before settling with the contractors for such work.

But clearly this contention is not to be sustained, in that it is both testified and by the court found as a fact that there was no binding agreement, or one supported by any valuable consideration, on the part of the plaintiff made with the contractor by which plaintiff was not to notify either the highway commission or the surety company of the pending indebtedness. Therefore, no such agreement was effected or had, which could prejudicially affect appellant's liability on its bond or deprive it of any right thereunder.

It appears conceded that in the absence of an agreement, the appellant's obligation under its bond being

an unconditional one, that the mere passivity or acts of forbearance by the creditor towards its insured principal debtor would not operate to discharge the surety. The alleged agreement had between the creditor and debtor being thus unenforceable as a contract, the same would clearly come within the rule of the Henderson Case, supra, as being ineffective to in any wise affect or change the surety's obligation under the bond. Appellee's conduct in forbearing to notify either the commission or the surety company of the unpaid indebtedness being merely passive or only a courteous indulgence extended its debtor (as found to be the case by the learned judge), we conceive he properly concluded that the rule of law applicable to such case was that the plaintiff was under no legal duty to file its claim with the highway commission or to make any disclosure or give any notice to the surety, unless requested to do so (which here it was not), and therefore that in failing to do so, no duty or obligation to the surety was violated; and, further, that in merely acquiescing in the contractor's request not to file the claim with the commission, plaintiff was guilty of no fraudulent conduct towards the surety—that same was nothing more than gratuitous indulgence through passivity and inaction, which did not operate to release the surety nor alter the absolute and unconditional liability of the surety under the terms of the contract and bond.

Further, the trial court's findings of fact embraced a finding to the effect that the appellant surety company made no inquiry and exercised no diligence in ascertaining whether the contractors owed unpaid claims for which it was responsible under the bond and made no effort to have the highway commission exercise the power given it by the terms of the contract and bond to withhold payments from the contractors until they showed that all claims for materials and supplies were satisfied; that ordinary diligence on the part of the surety would have enabled it to have ascertained the facts and to have protected itself against loss.

This finding was clearly sustained by the evidence, the defendant company's local agents and representatives having testified that the surety company had no agent in the state whatever during the year 1932; that it had never furnished any list of its outstanding bonds, in the state to its legal representative; that they were

never informed concerning the bond here involved at any time prior to March, 1933; and that between the first of the year 1932 and March, 1933, the defendant surety company had never made any inquiry whatever as to whether its insured Wilmore Construction Company was paying its bills or whether or not it was insolvent, or whether or not it had any outstanding bills for which the surety company might be liable.

Upon such showing made of lack of diligence on the part of the surety, the trial court found and adjudged that the plaintiff was entitled to recover from the appellant surety the amount of its debt and interest sued for.

Upon a like point involved in the Henderson Case, supra, this court further said:

"Of course, where the creditor does any act which may injuriously affect the rights of the surety, he discharges him. But unless he has specifically agreed in the bond to do so, the creditor owes no duty of voluntarily giving information of the principal's first delinquency or apparent default. It is the surety's business to see that the principal performs the duty which he has guaranteed. 'The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent, for whom the surety is liable. Mere inaction of the creditor will not discharge the surety unless it amounts to fraud or concealment. * * *' 21 R. C. L. 1072."

In 21 R. C. L., sec. 111, p. 1071, what we deem to be the applicable rule is thus stated:

"It is the business of the surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent, for whom the surety is liable."

We are of the opinion that this statement of the rule of law is here applicable to the factual set-up as presented and is controlling of the question involved, and, as found by the learned trial court, disposes of the question adversely to the contention of appellant.

We have considered carefully the cases cited and relied on by appellant as sustaining and supporting, in their announced principles, its contention that there here existed such a fraudulent agreement between the creditor and the insured debtor to conceal material facts affecting its risk under the bond as to release it from liability thereunder; but we find ourselves unable to concur with appellant in such claim. The facts of this case we regard as clearly bringing it within the operation of the rules cited by us rather than of those announced and applied in the cases cited by appellant, where the different issues, based upon substantially different facts, were presented, to which they were properly there applicable and decisive of them.

We are, therefore, of the opinion that the trial court's findings of fact and law are proper and supported under the pleadings and evidence before it, and that there was, as found by it, no such agreement between the appellee and its insured principal debtor as was effective to prejudice or to in any way increase the surety's risk under the bond before it was notified of the situation in March, 1933, when the contractor had become insolvent.

Numerous other points touching this one issue here involved are presented and forcefully argued in able briefs of counsel; but we do not deem it advisable to extend this opinion by further discussing these matters, in that we are of the opinion that the judgment of the trial court based upon its findings of fact (amply sustained by the evidence) and conclusions of law, represents a proper determination of the question of the surety's liability here involved in awarding recovery to appellee against the surety company.

Therefore, the judgment is affirmed.