FLORIDA STEEL
CORPORATION, Appellant,

v.

INDIANA LUMBERMAN'S MUTUAL IN-
SURANCE COMPANY and United
States Fidelity and Guaranty Company,
Appellees.

INDIANA LUMBERMAN'S MUTUAL IN-
SURANCE COMPANY and United
States Fidelity and Guaranty Company,
Cross–Appellants,

v.

FLORIDA STEEL CORPORATION,
Cross–Appellee.

Nos. 89–CA–000925–MR,
89–CA–000988–MR.

Court of Appeals of Kentucky.

May 4, 1990.

Philip C. Chance, Mapother and Mapother, Louisville, for Florida Steel Corp.

Uhel O. Barrickman, Richardson, Barrickman, Dickinson & Ropp, Glasgow, David F. Broderick, Elizabeth Y. Downing, Cole, Broderick, Minton, Moore & Thornton, Bowling Green, for Indiana Lumberman's Mut. Ins. Co. and U.S. Fidelity and Guar. Co.

Before HOWERTON, C.J., and LESTER and STUMBO, JJ.

STUMBO, Judge.

Florida Steel Corporation (hereinafter Florida) provided supplies to the Cloverleaf Construction Company (hereinafter Cloverleaf) for work on two (2) state highway projects.  One project was located in Shelby County and Cloverleaf was the prime contractor for that project.  Florida submitted original bills to Cloverleaf on March 20, 1986, in the amount of $7,548.37 and again on July 31, 1986, for $90.83.  The testimony indicated that Florida repeatedly contacted Cloverleaf demanding payments.  Testimony indicated that Cloverleaf was sometimes late in paying but had always

previously paid Florida Steel over the many years in which the two companies had done business.

The second project took place in Barren County, Kentucky, where Cloverleaf was a subcontractor to Tommy Wells Construction, again on a state highway project. The Barren County project resulted in three (3) bills to Cloverleaf from Florida, the first issued on February 26, 1986, for $7,569.25; the second issued June 5, 1986, for $609.80; and the last on August 12, 1986, for $138.38. Again, Cloverleaf failed to pay the bills despite monthly statements and numerous telephone calls.

In January, Florida discovered that Cloverleaf had posted a payment bond on the Shelby County project with Indiana Lumberman's Mutual Insurance Company. Likewise the Barren County job was bonded but with United States Fidelity and Guaranty. That particular bond had been obtained by Tommy Wells Construction Company to cover payment for any firm or corporation or person who furnished labor, materials or supplies for use on the project. We note that neither bond contained any provision requiring a supplier such as Florida Steel to provide notice to the surety of Cloverleaf's failure to make payment. On June 17, 1987, Florida contacted both Indiana Lumberman's and U.S.F. & G. requesting payment in accordance with the terms of the payment bonds. Both refused to honor the claims. Neither company was aware of the defaults of Cloverleaf until Florida made this contact. Florida initiated suit on July 23, 1987. Indiana Lumberman's and U.S.F. & G. answered alleging estoppel and laches as defenses. Cloverleaf failed to respond and default judgment was entered.

At trial, Florida presented testimony setting forth their billing procedure and attempts to collect the monies from Cloverleaf.

Indiana Lumberman's and U.S.F. & G. rely primarily on the testimony of Mr. Tommy Wells of Tommy Wells Construction as establishing that the two sureties did attempt to determine that Cloverleaf had paid its debts in regard to the two projects prior to dispersing funds to Cloverleaf. However, Mr. Wells testified that he did not inquire of Cloverleaf as to who the suppliers were, did not know that Florida was a supplier to Cloverleaf, and accepted verbal assurance from unnamed persons at Cloverleaf that all bills had been paid. We note that Tommy Wells dealt only with the Barren County project and had no connection with the Shelby County project. Thus, his testimony is relevant only to the claim against U.S.F. & G.

On appeal, Florida raises a number of issues in regard to the appropriateness of the instructions and the sufficiency of the evidence presented by Indiana Lumberman's and U.S.F. & G. However, we deem it unnecessary to address those issues because we feel that the trial court erred as a matter of law in overruling Florida's motion for directed verdict. In moving for directed verdict, Florida relied upon the language of the surety bonds and Kentucky case law. There is nothing in either bond that requires a creditor to provide notice to the surety of its principal's default. In *National Union Indemnity Co. v. Standard Oil Co.*, 262 Ky. 392, 90 S.W.2d 375 (1936), the Court of Appeals cited to the following findings of the trial court:

> Further, the trial court's findings of fact embraced a finding to the effect that the appellant surety company made no inquiry and exercised no diligence in ascertaining whether the contractors owed unpaid claims for which it was responsible under the bond and made no effort to have the highway commission exercise the power given it by the terms of the contract and bond to withhold payments from the contractors until they showed that all claims for materials and supplies were satisfied; that ordinary diligence on the part of the surety would have enabled it to have ascertained the facts and to have protected itself against loss.... [T]he defendant surety company had never made any inquiry whatever as to whether its insured Wilmore Construction Company was paying its bills or whether or not it was insolvent, or

whether or not it had any outstanding bills for which the surety company might be liable.

Upon such showing made of lack of diligence on the part of the surety, the trial court found and adjudged that the plaintiff was entitled to recover from the appellant surety the amount of its debt and interest sued for. *Id.*, 262 Ky. at 400–401, 90 S.W.2d 375. Therein, the Court of Appeals ruled as follows:

"It is the business of the surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent, for whom the surety is liable." (Cites omitted.)

As to Florida's delay in seeking payment from Indiana Lumberman's and U.S.F. & G., in *Henderson v. Phoenix Insurance Company*, 233 Ky. 217, 25 S.W.2d 359 (1930), the Court of Appeals stated as follows:

"As shown in the preceding paragraph, an extension of the time of payment is generally ineffective to discharge the guarantor unless the creditor binds himself so that he cannot enforce the obligation for a certain time which had the effect of discharging the guarantor. So, where the creditor does not bind himself to any delay, mere laches in the enforcement of the obligation or indulgence given to the debtor, does not release the guarantor. That the indulgence given to the principal debtor may work to the disadvantage of the guarantor does not generally affect the question." (Cites omitted.)

. . . .

But unless he has specifically agreed in the bond to do so, the creditor owes no duty of voluntarily giving information of the principal's first delinquency or apparent default. It is the surety's business to see that the principal performs the duty which he has guaranteed.

More recently the New York Court of Appeals made a similar finding in *State v.*

*Peerless Insurance Company*, 67 N.Y.2d 845, 501 N.Y.S.2d 651, 492 N.E.2d 779 (1986), wherein a creditor, having notice of delinquent payments from the principal on the bond, continued to sell goods without advising the surety of the principal's delinquency or default. Suit was filed and the surety asserted the affirmative defense of estoppel. The trial court denied the creditor's motion for summary judgment and was reversed by the appellate court which granted summary judgment for the creditor. Therein, the court found as follows:

[A]bsent either an express agreement in a surety bond or inquiry by the surety, the creditor has no duty to keep the surety informed of the debtor's financial situation. Rather, the surety bears the burden of making inquiries and informing itself of the relevant state of affairs of the party for whose conduct it has assumed responsibility. Further, there is no support on the record for the allegation that the creditor fraudulently concealed the financial condition of the principal.... Indeed, the insufficiency of the sureties claim of fraudulent concealment is made manifest by the fact that they never even inquired of the creditor about the financial status of the principal during the period the bonds were in effect, thus demonstrating that there could not have been any reliance, an essential ingredient in a fraud claim.

*Id.*, 501 N.Y.S.2d 652–53, 492 N.E.2d at 780–81.

The only evidence of any inquiry as to the payment of Cloverleaf's debts was given in the testimony of Tommy Wells, general contractor on one of the projects. Wells testified that he basically asked if the debts were paid and was assured verbally that they were. No inquiry at all was made in regard to the other project.

Having found that the trial court erred as a matter of law in not directing a verdict in favor of Florida, there's no need to address the other issues raised by appellant on appeal. We will however advise the parties that, in our opinion, the instructions given by the trial court were erroneous for the reasons set forth in appellant's brief.

We note that Indiana Lumberman's and U.S.F. & G. cross-appealed, contending that their motion for summary judgment and/or directed verdict should have been granted. For the reasons set forth herein we disagree strongly. Thus, the appeal of Florida Steel, No. 89–CA–000925, results in reversal with directions for the trial court to enter directed verdict in accordance with this opinion. Further, the appeal of Indiana Lumberman's and U.S.F. & G., No. 89–CA–000988–MR, is hereby dismissed.

All concur.